J-S19009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MICHAEL F. FLYNN :
:
Appellant : No. 1488 EDA 2021

Appeal from the Order Entered June 16, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009050-2018

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.: **FILED AUGUST 23, 2022**

Michael Flynn has filed an interlocutory appeal from the Philadelphia

County Court of Common Pleas' order denying his motion to bar reprosecution

on double jeopardy grounds. Flynn filed this motion on the heels of the trial

court granting his motion for a mistrial after the Commonwealth improperly

exposed the jury to evidence of Flynn's prior bad acts during trial. The

Commonwealth did so by projecting on a video screen a computer-generated

version of Flynn's statement to police, which did not redact Flynn's reference

to his prior bad acts in accordance with an agreement by the parties. Although

this was clearly an error on the part of the Commonwealth, we do not conclude

_____

[*] Former Justice specially assigned to the Superior Court.

that the Commonwealth's actions constituted prosecutorial overreaching so as to trigger the double jeopardy bar. We therefore affirm, and remand for retrial.

The facts leading up to Flynn's first trial, and the granting of the motion for a mistrial during that first trial, are as follows. Special Agent Daniel Block of the Pennsylvania Office of the Attorney General arrested Flynn for soliciting sex online from a male who Flynn believed to be 14 years old. Flynn was Mirandized and gave an audio-recorded statement admitting he had an online discussion about paying for sex with a male who told him he was 14 years old. During his statement, Flynn also reported he had been arrested and sentenced for a series of sexual assaults in 1976, one involving a male victim and the others involving five separate female victims. Flynn told the police that the ages of the victims ranged from thirteen to twenty-five.

Prior to trial, the Commonwealth filed a Rule 404(b) motion *in limine* to admit evidence of Flynn's conviction involving the male. Specifically, the Commonwealth sought to introduce evidence that Flynn had pleaded guilty to the involuntary deviate sexual intercourse ("IDSI") of a 13-year-old boy in 1976. The trial court granted the Commonwealth's motion. Despite the court's ruling allowing evidence of the previous IDSI to be admitted, the Commonwealth informed both the trial court and defense counsel on the day before trial that it would not introduce the prior bad act evidence unless the defense opened the door to its introduction. *See* N.T. Motion, 5/11/21, at 6-7. The Commonwealth also reported it planned to introduce the audio and a

written transcript of Flynn's post-arrest statement, but that Flynn's reference to his prior sexual assault convictions would be redacted from both. ***See id.*** at 15. Defense counsel had no objection. ***See id.***

The matter proceeded to a jury trial the next day, and the first witness the Commonwealth called to the stand was Agent Block. Agent Block testified he was assigned to the child predator section of the Pennsylvania Attorney General's office where he, among other things, investigated potential online sexual predators. According to Agent Block, as part of his online undercover investigations, he created covert profiles on Grindr, a social media "site for [gay] males to hook up." N.T. Trial, 5/12/21, at 54. He created one such covert profile on the morning of December 1, 2018. Although Agent Block represented he was 18 years old in this profile, as that is the minimum age allowed by Grindr to create an account, Agent Block testified it is well known that minors use Grindr.

Block recounted that later in the morning on December 1, 2018, he received a message to the covert profile from a Grindr account named "I have issues." "I have issues" represented that his name was Mike, and that he was white, 5'10" and 62 years old. Agent Block testified he responded from the covert account and began a conversation with "I have issues." During their conversation, Agent Block twice messaged "I have issues" that he was 14 years old, and alluded to that age a third time by indicating he had another two years before he could drive. According to Block, "I have issues" arranged

to meet the purported child at a CVS in Northeast Philadelphia at 6 p.m., after which the two would return to "I have issue's" home and engage in sexual activities for which "I have issues" would pay the purported child.

Agent Block testified he, along with several other agents and officers from the Philadelphia Police Department, went to the designated CVS and saw a man matching the physical description provided by "I have issues" enter the store minutes after 6 p.m. The Commonwealth then played a security video taken from inside the store for the jury, with Agent Block providing narration of the video. The video showed the man looking up and down the aisles of the store, while periodically manipulating his cell phone. Agent Block testified he received a message from "I have issues" while inside the store stating that he could not find the purported child. After Agent Block received that message, he testified his entire conversation with "I have issues" disappeared.

The man left the CVS, but returned to the store a few minutes later. After the man looked around some more and then left the store the second time, Agent Block, accompanied by other officers, approached and stopped the man. Agent Block averred that the man, later identified as Flynn, allowed Agent Block to look at his phone. The phone had the Grindr application "up and running" on it, along with the "I have issues" profile. *Id.* at 101. Agent Block arrested Flynn.

Agent Block told the jury Flynn gave an audio-recorded statement to police acknowledging he had used Grindr that day to try to engage in certain

explicit sex acts with a male who told Flynn he was 14 years old. In preparation for playing that audio for the jury and in accordance with the pre-trial agreement, the Commonwealth distributed a written transcript of Flynn's statement that had redacted Flynn's references to his prior convictions for sexual assault. The Commonwealth's technical support person started to play the audio of Flynn's statement while simultaneously projecting a transcript of the statement on a video screen in the courtroom *via* a computer.

At that point, defense counsel requested a sidebar, and one was held off the record. Once the parties returned from the sidebar, the court remarked that there is "nothing like a technical hiccup. I think we got it fixed." ***Id.*** at 123. The court crier then interjected "one moment, counsel," and the court then held a second sidebar, again off the record. ***Id.*** The parties returned and the audio of Flynn's statement was played for the jury.

After Agent Block completed his direct examination, and the jury left the room, the court addressed the two sidebars that had been held. The court stated it had noticed that an unredacted version of the transcript, with Flynn's references to his previous sexual assaults intact, had been displayed on the video screen for about five seconds before it was taken down.[1] Defense counsel said he also saw the unredacted statement on the screen, that it had

---

[1] According to Flynn, there were two files of Flynn's statement on the computer - one containing the unredacted statement and one containing the redacted statement.

been put up twice - once before the first sidebar and once after the first sidebar. *See id.* at 134, 137, 151. He was not sure how long it stayed on the screen. *See id.* at 134.

Both the court officer and the court crier indicated that the statement was up on the screen when the parties walked to the sidebar. *See id.* at 140-141. The prosecutor, meanwhile, stated she had not seen what version of the transcript was up on the screen, had not been the one operating the computer, and the person who had been operating the computer denied the unredacted version was the one displayed a second time. *See id.* at 138. Defense counsel moved for a mistrial.

The court acknowledged the problem:

> We all agree that the bad [unredacted] version was up first for five seconds and then [defense] counsel is stating as an officer of the court that he saw the bad [unredacted] version up again when we went in the back [to sidebar].

*Id.* at 142. Meanwhile, the court also stated:

> Counsel did not do this on purpose. We are dealing with technical things. Technical issues happen…[I]t clearly wasn't done on purpose. No one is saying that the Commonwealth did this on purpose.

*Id.* at 139. The court later emphasized "[f]or the record, I'm going to say this a million times, people make mistakes. It was a technical error. No one did this on purpose." *Id.* at 153.

The court took the matter under advisement to consider whether a mistrial without prejudice was warranted, *see id.* at 156 ("I'm not going to

have prejudice for this case [-i]t was not intentional in any way, shape or form by counsel"), or whether the matter could be resolved by giving a curative instruction. The court stated it would review the matter overnight, and invited counsel to submit case law and argument on the issue. Defense counsel did so, essentially arguing that a new trial was warranted because instructions would not sufficiently cure the prejudice Flynn suffered by the jury's exposure to the evidence of his prior bad acts. *See* Appendix A to Trial Court Opinion, 1/13/22, Defense Counsel's Email to Trial Court dated 5/12/21.

The following day, the court granted the motion for a mistrial, without prejudice to retry Flynn. In doing so, the court stated it had already made a record about what was "inadvertently" seen by members of the jury in what had only been a "technical issue" which the Commonwealth quickly tried to fix. *See* N.T. Motion, 5/13/21, at 4. The court explained granting the mistrial motion without prejudice was appropriate as it would not be overly burdensome to restart this one-day case, especially given the brevity of the testimony that had been presented. *See id.* at 4-5. The parties then began discussing dates for a new trial. Neither Flynn nor the Commonwealth appealed the order granting the motion for a mistrial without prejudice.

Just shy of a month later, however, Flynn filed a "petition to bar prosecution as a violation of double jeopardy" ("motion to dismiss"). In this motion, Flynn maintained for the first time that the Commonwealth's actions in twice publishing the unredacted transcript to the jury were undertaken with

a reckless disregard for whether Flynn would be denied his right to a fair trial. This recklessness, Flynn argued, triggered the bar to prosecution on double jeopardy grounds under **Commonwealth v. Johnson,** 231 A.3d 807 (Pa. 2020) (holding that prosecutorial overreaching sufficient to invoke double jeopardy protections under the Pennsylvania constitution includes not only intentional misconduct, but also reckless conduct that deprived the defendant of a fair trial).

The trial court held a previously-scheduled trial readiness conference on June 16, 2021. At the conference, the trial court first addressed, and immediately denied, the motion to dismiss. The court explained it had already considered the issue by granting the motion for a mistrial without prejudice. The court stated it had given counsel the opportunity to brief the issue of what relief was appropriate - curative instructions or a mistrial. At that time, counsel did not raise any claim regarding double jeopardy or **Johnson**. Instead, counsel advocated for the granting of a mistrial and a new trial - the very relief the court gave by granting the motion for a mistrial without prejudice. The trial court stated there was no need to relitigate the matter. **See** N.T. Motion, 6/16/21, at 3-4.

Flynn filed an interlocutory notice of appeal. He also filed a "petition for remand for hearing on the motion to dismiss on double jeopardy grounds and for compliance with Pa.R.Crim.P. 587(B)" with this Court. In that petition, Flynn argued the trial court's refusal to hold a hearing in which he could

present evidence on his claims regarding the Commonwealth's intent for purposes of double jeopardy violated Rule 587(B). This Court denied the petition without prejudice to Flynn's right to again raise the issues in the petition before the merits panel of this Court, either by refiling the petition or raising the issues in his appellate brief.

Flynn chose the latter and now raises the following two issues:

1. Did not the failure of the lower court to hold a hearing on [Flynn's] written motion to dismiss on double jeopardy grounds in violation of Pennsylvania Rule of Criminal Procedure 587(B) not only deprive [Flynn] of an ability to present both evidence and argument in support of his claim, but further deprives this Court of an adequate record on which to resolve the sole issue on appeal?

2. Did not the lower court err and abuse its discretion by denying the motion to bar prosecution as a violation of Double Jeopardy as the Commonwealth's deliberate indifference to the preparation and presentation of trial (given a previous ruling on a motion *in limine* and the admonition by the trial court and time given to correct its first misconduct of showing the jury prejudicial information) is recklessness that is the functional equivalent of intentional misconduct and is prosecutorial overreaching meriting a double jeopardy bar of retrial?

Appellant's Brief at 3.

Flynn first argues the trial court erred by refusing to grant his request for a hearing on his motion to dismiss on double jeopardy grounds. Specifically, he alleges the court erroneously failed to "entertain any argument on the merits of his claim under **Johnson**, or hold an evidentiary hearing in

- 9 -

support of, or in opposition to, the motion to dismiss." *Id.* at 18. By doing so, Flynn maintains, the trial court violated Rule 587. This claim fails.[2]

Rule 587(B) addresses motions for dismissal on double jeopardy grounds and states in relevant part:

> (2) A hearing on the motion shall be scheduled in accordance with Rule 577 (Procedures Following Filing of Motion). The hearing shall be conducted on the record in open court.
>
> (3) At the conclusion of the hearing, the judge shall enter on the record a statement of findings of fact and conclusions of law and shall issue an order granting or denying the motion.

Pa.R.Crim.P. 587 (B)(2),(3). "'Hearing,' as used in paragraph (B)(2) includes the taking of testimony, or the hearing of argument, or both." Pa.R.Crim.P. 587 at Official Comments.

In turn, Rule 577 provides that "if the judge determines the motion requires a hearing or argument, the court or the court administrator shall schedule the date and time for the hearing or argument." Pa.R.Crim.P. 577

---

[2] Flynn also claims the trial court violated Rule 587 by failing to make a finding as to whether or not his double jeopardy motion was frivolous. As the Commonwealth points out, however, a finding of frivolousness goes to whether this Court has jurisdiction over Flynn's interlocutory notice of appeal. This Court has held that "pre-trial orders denying double jeopardy claims are immediately appealable in the absence of a written finding of frivolousness." *Commonwealth v. Feaser*, 723 A.2d 197, 199 n.2 (Pa. Super. 1999) (quotation marks and citation omitted); *see also Commonwealth v. Gross,* 232 A.3d 819, 833 (Pa. Super. 2020) (*en banc*) (finding that trial court's order denying a double jeopardy motion was immediately appealable in the absence of a finding that the motion was frivolous). Because the trial court did not make a finding that Flynn's motion was frivolous, we have jurisdiction over this appeal and we fail to see any prejudice to Flynn.

(A)(2). Therefore, as both the trial court and the Commonwealth have pointed out here, it is the trial judge who determines whether a double jeopardy motion requires a hearing or argument. The trial court here made clear that it had allowed for and considered argument on this matter. It concluded that it had therefore:

> Fully complied with … Pa.R.Crim.P. 587 in giving both parties ample opportunity to make argument[s] as to the issue of prejudice, and even held the record open to give counsel the opportunity to present case law and argument as to the issue. Defense counsel emailed their position, stating unequivocally that a new trial was the appropriate remedy.

Trial Court Opinion, 1/13/22, at 8-9.

Flynn counters, however, that this Court's decision in ***Commonwealth v. Kemick***, 240 A.3d 214 (Pa. Super. 2020), compels the conclusion that the trial court failed to comply with Rule 587 when it denied Flynn the opportunity to present testimony in support of his newfound ***Johnson*** claim. But ***Kemick*** does not hold, as Flynn appears to contend, that a court is required to hold an evidentiary hearing on every double jeopardy motion that is filed. Rather, the panel in ***Kemick*** held that the lower court erred by failing to hold an evidentiary hearing on Kemick's double jeopardy motion, which arose in circumstances far different than those here.

In ***Kemick***, Kemick pleaded guilty to a series of burglary and thefts in Bradford County between July 2017 and September 2017 at four different docket numbers. He then filed a motion to dismiss new criminal charges that were subsequently filed for a burglary and related offenses committed in

- 11 -

August 2017 in Bradford County on the basis that prosecution of those charges would violate double jeopardy and the compulsory joinder rule.

Kemick requested a hearing on the motion, and the trial court convened the parties to address the motion. Although Kemick was prepared to present the testimony of at least nine witnesses in support of his motion to dismiss at the hearing, the trial court did not admit any testimony or hear arguments on the motion. It subsequently denied the motion without any findings of fact or conclusions of law.

Kemick appealed, arguing the trial court violated Rule 587 by failing to hold a hearing to give Kemick the opportunity to present the proffered testimony and evidence in support of his motion. This Court agreed and stated:

> Rule 587(B) clearly required the trial court to develop a record, by some means, in order that it could make findings of fact, reach conclusions of law, and issue an order either granting or denying the motion to dismiss. A record can be developed by conducting a hearing, as defined by the official comments to Rule 587, or by other means, such as, conducting a proceeding for the purpose of admitting evidence or taking judicial notice of other proceedings and documents to generate a factual record pertinent to claims asserting double jeopardy and compulsory joinder.

*Id.* at 220 (internal citation omitted).

Here, as the Commonwealth points out, Flynn, unlike Kemick, did not offer any witnesses he wished to present at the hearing. In fact, Flynn did not outline any additional evidence he wished to present to the court in his motion to dismiss in support of his *Johnson* claim or even request a hearing in his

- 12 -

motion to dismiss. Therefore, this issue regarding the holding of a hearing is not even preserved for our review. *See* Pa.R.A.P. 302(a) (providing that any issue not raised in the lower court is waived and cannot be raised for the first time on appeal).

Even if the issue were preserved, Flynn does not offer any persuasive arguments as to why an evidentiary hearing was needed. The trial court here, unlike the trial court in *Kemick*, had already developed a record on the circumstances surrounding the Commonwealth's conduct Flynn now says warrants a bar on reprosecution. Moreover, the parties generally agree on the factual predicate underlying Flynn's claim. The Commonwealth concedes that "the computer-generated image of the transcript displayed on a screen showed the redacted information. The Commonwealth attempted to correct the technical issue that caused the wrong version to be shown, but when the transcript was displayed on the screen again, that version was again visible." Commonwealth's Brief at 3-4. Accordingly, the Commonwealth does not dispute that it showed the unredacted statement, attempted but failed to correct the issue, and showed the unredacted statement again.

Flynn adds that in addition to the Commonwealth twice showing the unredacted version of the statement, the second time arose after the court instructed, and gave time to, the Commonwealth to remedy the problem at the first off-the-record sidebar. It appears Flynn is suggesting for the first time that an evidentiary hearing was required to elicit testimony that this is what

occurred at the sidebar. However, not only would it seem logical that the court instructed and allotted time for counsel to fix the problem the court itself had seen, the Commonwealth does not in any way dispute the court gave this instruction or time to fix the problem. In the end, even if Flynn had preserved his issue by requesting a hearing before the trial court, we do not see how the trial court committed reversible error by not holding an evidentiary hearing prior to denying Flynn's motion to dismiss under the circumstances here.

Turning to Flynn's substantive double jeopardy claim, he argues the Commonwealth's actions underlying the granting of his motion for a mistrial should also prohibit the Commonwealth from retrying him at a new trial on double jeopardy grounds. As such, Flynn maintains, the trial court improperly denied his motion to dismiss. We disagree.

An appeal grounded in double jeopardy raises a question of constitutional law and this Court's scope of review is therefore plenary. **See Commonwealth v. Krista,** 271 A.3d 465, 468 (Pa. Super. 2022). Our standard of review is *de novo*. **See id.** To the extent the trial court's factual findings impact its double jeopardy ruling, we apply a more deferential standard of review to those findings. **See id.**

The Double Jeopardy Clauses of both the federal and Pennsylvania constitutions protect a defendant from repeated prosecutions for the same offense. **See id.** at 469. However, retrial is generally allowed where a first trial ends in a mistrial. **See id.** This is because the dismissal of charges, among

- 14 -

other things, subverts the public's reasonable expectation that those charged with a crime will be prosecuted for their crime. ***See id.*** Accordingly, dismissal is an "extreme sanction that should be imposed sparingly, only in the most blatant and egregious circumstances." ***Id.*** at 469 (citation and internal quotation marks omitted).

Under both the federal and state constitutions, such circumstances exist when a mistrial resulted from prosecutorial overreaching in the form of intentional misconduct designed to provoke a mistrial. ***See id.*** Our state Supreme Court has found, however, that the Pennsylvania constitution gives even broader double jeopardy protections than those under the federal constitution. ***See Commonwealth v. Smith,*** 615 A.2d 321 (Pa. 1992). To that end, the ***Smith*** Court held that our state constitution prohibits a subsequent trial "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." ***Id.*** at 325.

Despite this broadening of double jeopardy protections under our state constitutional law, our High Court later clarified that only misconduct that is sufficiently egregious to be classified as prosecutorial overreaching will invoke the double jeopardy bar. ***See Johnson***, 231 A.3d at 822. The ***Johnson*** Court made clear that there is a difference between mere prosecutorial errors, which are "an inevitable part of the trial process," and prosecutorial overreaching,

which is not. *Id.* at 824 (citation and internal quotation marks omitted). Unlike mere prosecutorial error, "overreaching signals that the judicial process has fundamentally broken down because it reflects that the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." *Id.* at 824 (citation omitted). The *Johnson* Court reaffirmed that, under our state constitution and firmly entrenched in our case law, there is an "overreaching prerequisite" to any finding that prosecutorial misconduct bars a retrial on double jeopardy grounds. *Id.* (internal quotation marks omitted).

*Johnson* went on to address the question of whether misconduct, which is undertaken recklessly, rather than intentionally, can qualify as overreaching. It held:

> Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in *Smith*, relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial. In reaching our present holding, we … highlight again that, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial *overreaching* - which, in turn, implies some sort of conscious act or omission.

*Id.* at 826 (emphasis in original).

Here, Flynn does not argue the Commonwealth deliberately or intentionally displayed the unredacted statement to the jury. Instead, he asserts the Commonwealth recklessly showed the statement to the jury and essentially claims this recklessness should bar his retrial. His claim fails.

In the first place, Flynn's argument seems to ignore the "overreaching prerequisite" mandated by **Johnson**. **Johnson** made clear that the initial question in determining if a retrial is barred on grounds of prosecutorial misconduct is whether the prosecutor made a mere error or whether the prosecutor overreached to the point of denying the defendant a fair trial, whether it be intentionally or recklessly.

Here, it is clear from the record the trial court found that the Commonwealth's showing of the unredacted statement on the video screen was merely an error, not prosecutorial overreaching. The court repeatedly called the incident "inadvertent" and various forms of an unintentional technical mistake. It stated in no uncertain terms that "the record is clear that the error was a technical misstep on the part of the Commonwealth, rather than any surreptitious or maligned motive to trigger a mistrial." Trial Court Opinion, 1/13/22, at 8.

This Court has emphasized that, in the wake of **Johnson**, an appellant seeking to bar retrial on the basis that the Commonwealth's alleged reckless conduct deprived him of a fair trial must still show, as a threshold matter, that the prosecutor engaged in overreaching:

> Appellant loses sight of the fact that, regardless of the *mens rea* involved, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial overreaching. … Indeed, Appellant's advocacy appears to be premised on the idea that the existence of overreaching is a given, and it is just a matter of whether that overreaching was done recklessly. That is simply not the case.

- 17 -

As mentioned above, overreaching is conduct that reveals a fundamental breakdown in the judicial process where the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice. Examples of overreaching [include]... the prosecution[ ] consistently making reference to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections, and ... repeatedly insisting that there was fingerprint evidence linking [the defendants] to the crime when the prosecutor knew for a fact that no such evidence existed. [Another example is] contacting a defense witness to intimidate her and prevent her from testifying. In such scenarios, it is clear the prosecutor made conscious decisions, be they intentional malfeasance or a failure to heed red flags signaling an unintentional error, to place getting a favorable verdict ahead of the defendant's rights.

*Krista,* 271 A.3d at 473-474 (citations omitted).

Applying that analysis to the facts before it, the *Krista* Court held that even if it were to agree with the appellant that the prosecutor's improper comment on the appellant's decision not to testify was made recklessly, it did not qualify as the kind of overreaching that bars a subsequent trial. Under *Johnson*, the *Krista* court stated, retrial should only be barred when the "prosecutor's misconduct is an act of deliberate or reckless overreaching and not an isolated incident," such as the one that occurred in that case. *Id.* at 474. The *Krista* court emphasized that the prosecutor's misconduct in its case did not come close to qualifying as the type of "overreaching" necessary to prohibit the appellant's retrial. *See id.*

We reach a similar conclusion, as there was no overreaching here. At the outset, it is worth noting that it was the Commonwealth's technical support person, and not the prosecutor, who was the one controlling the computer

- 18 -

when the unredacted version was shown on the video screen. Even so, we simply fail to see how the Commonwealth's showing of the unredacted statement, an isolated incident found by the trial court to be inadvertent, reflects a situation where the Commonwealth was seeking a conviction at the expense of justice. In fact, as the trial court repeatedly stated, there was absolutely no incentive for the Commonwealth to do anything that had the potential to jeopardize what the court described as "a near-certain conviction." Trial Court Opinion, 1/13/22, at 7; **see also id.** at 8 (stating "the case against [Flynn] was so strong, that even after it was clear that a mistrial was imminent, the parties still discussed the possibility of a guilty plea"). As the Commonwealth points out, and the trial court found, the strength of the Commonwealth's case against Flynn only serves to undermine any finding that the Commonwealth engaged in overreaching.

Flynn seems to argue that the Commonwealth's actions constituted recklessness, and therefore overreaching, because the Commonwealth: (1) should not have had the unredacted version of the statement "in its queue" in the first place; (2) failed to correct the problem after being told to do so at the first sidebar; and (3) violated the court's ruling regarding the Commonwealth's Rule 404(B) motion. None of these circumstances persuade us there was overreaching.

In the first place, it is not unreasonable that the Commonwealth had the unredacted version of Flynn's statement available, given that it had reserved

its right to use evidence of the 1976 IDSI conviction if the defense opened the door to its introduction. Moreover, although it is true the unredacted statement referenced all six of Flynn's 1976 convictions and the Commonwealth only sought to admit the one IDSI in its Rule 404(B) motion, the trial court specifically found that the "Commonwealth made efforts to abide by the Court's ruling with regard to excluded evidence." *Id.* at 8. And, again, the Commonwealth acknowledged that the unredacted version was displayed twice, but the court found this was the result of a mere technical error, not some reckless disobedience of its directive to fix the error.

Flynn also argues the Commonwealth's actions here are akin to those in ***Johnson***, where our state Supreme Court, after concluding that reckless prosecutorial overreaching may bar retrial, found the prosecutor in that case had engaged in such reckless overreaching. Not only do we disagree with Flynn, but in our view, ***Johnson*** only buttresses our finding that there was no overreaching by the Commonwealth here. ***Johnson*** involved what the trial court in that case described as "almost unimaginable" prosecutorial errors, which have been summarized this way:

> The unimaginable prosecutorial errors involved the Commonwealth's mishandling of the most critical pieces of trial evidence, particularly two baseball caps, one red and the other black, each with a distinct property receipt number. Forensic analysis established that the victim's blood was found only on the black cap, which had a bullet hole in it, and that the red cap contained only the DNA of the defendant. At trial, the Commonwealth proceeded on the mistaken theory that there was only one baseball cap, the red one, which contained both the blood of the victim and the DNA of the defendant. The prosecutor

repeatedly informed the jury that the defendant had shot the victim at close range, causing the victim's blood to appear on the defendant's cap, when no evidence supported such [a] claim. Two Commonwealth witnesses reinforced this erroneous theory in their trial testimony.

***Commonwealth v. Edwards,*** 272 A.3d 954, 971 (Pa. 2022).

Johnson was convicted of first-degree murder. After a forensics lab report revealed a second cap had been analyzed, exposing the prosecutor's erroneous trial theory, the trial court vacated Johnson's conviction on collateral review. Johnson moved to dismiss the charges. Our Supreme Court held that retrial was barred and, in doing so, highlighted two of the errors made by the prosecutor:

> [F]irst, there was a notable discrepancy between the property receipt numbers for the two caps. The prosecutor was aware this meant that the associated results reflecting the presence of the victim's blood and [the defendant's] DNA might have related to different pieces of evidence. Yet, in the face of this information, he never sought to verify his working hypothesis that the receipt numbers pertained to the same baseball cap. He did not even notice this error at the preliminary hearing when he had in his possession property receipt number 2425291, which clearly stated that it was associated with a black baseball cap. Second, in preparation for a capital case, the prosecutor did not obtain a criminalistics report which would have summarized the evidence connected with the matter and revealed there were two different caps involved.

***Johnson***, 231 A.3d at 826-827.

It was against this backdrop of "almost unimaginable" errors that our Supreme Court found the prosecutor had engaged in conduct "strongly suggestive of a reckless disregard for consequences and the very real

possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." *Id.* at 827.

In even the quickest comparison between *Johnson* and this case, it becomes obvious that the errors of the Commonwealth in this case do not even come close to the reckless errors of the prosecutor in *Johnson*. Here, the trial court repeatedly noted that the Commonwealth's technical assistant's showing of Flynn's unredacted statement from the computer was an inadvertent, technical mishap. It was an isolated incident; it is not as though the prosecutor tried to introduce evidence of Flynn's prior bad acts into evidence in other ways. As noted above, the prosecutor had no need to do so given the strength of its case. Indeed, in light of all the evidence it had against Flynn, the Commonwealth agreed that it would not proactively introduce the one previous IDSI conviction that the trial court ruled the Commonwealth was free to admit. Based on all of these circumstances, Flynn has failed to establish that there was prosecutorial overreaching here, the prerequisite *Johnson* explicitly requires him to show in order to obtain the relief he seeks.

To be clear, there is no dispute that the Commonwealth's two-time showing of the unredacted version of Flynn's statement was an error. The trial court recognized the error, and declared a mistrial because of it. However, the error does not rise to the level of overreaching we saw in *Johnson* or any of the cases described by the *Krista* Court above. We therefore agree with the trial court that there is no double jeopardy impediment to retrying Flynn for

the crimes for which he has been charged, and we affirm its order denying Flynn's motion to dismiss on double jeopardy grounds.

Order affirmed. Matter remanded for retrial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/23/2022