J-A29018-21

2022 PA Super 20

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
   :             PENNSYLVANIA
   :
         v.                     :
   :
   :
RICHARD KRISTA                :
   :
          Appellant        :    No. 446 WDA 2021

Appeal from the Order Entered March 16, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0007547-2012

BEFORE:   BENDER, P.J.E., BOWES, J., and PELLEGRINI, J.[*]

OPINION BY BOWES, J.:                **FILED: FEBRUARY 4, 2022**

Richard Krista appeals the denial of his second motion to bar retrial

based upon double jeopardy.  We affirm.

This Court summarized the history of this case as follows on Appellant's

appeal from the denial of his first motion to bar retrial based upon double

jeopardy:

> Appellant was charged with two counts of homicide
> pertaining to his involvement in the shooting of two men, which
> took place on May 11, 2012, behind a housing project in West
> Mifflin.  Appellant's first trial, which concluded on October 10,
> 2013, ended in a mistrial due to a hung jury.  His second trial also
> ended in a mistrial on January 23, 2014, due to a hung jury.
> Appellant was tried a third time.  However, during defense
> counsel's cross-examination of a police detective, the
> Commonwealth objected to a series of questions and suggested
> that Appellant can take the witness stand and explain what
> happened on the night in question.  Appellant moved for a mistrial,
> and the trial court gave a curative instruction the following day.

---

[*] Retired Senior Judge assigned to the Superior Court.

On June 5, 2014, at the conclusion of the trial, Appellant was convicted of two counts of first-degree murder. On July 29, 2014, Appellant was sentenced to serve two consecutive terms of life imprisonment without parole. Appellant then filed a direct appeal. On August 9, 2016, this Court vacated Appellant's judgment of sentence and remanded for a new trial after determining the prosecutor impermissibly commented on Appellant's decision not to testify, in violation of Appellant's Fifth Amendment rights, and the misconduct was not rendered harmless by the circumstances under which it was made, or by the trial court's delayed curative instruction. ***Commonwealth v. Krista*** [("***Krista I***")], 156 A.3d 332, 174 WDA 2015 (Pa. Super. 2016) (unpublished memorandum at 26).

Upon remand, Appellant filed a motion to bar retrial and dismiss the charges. The trial court held a hearing and denied the motion on December 8, 2017. Pursuant to Pa.R.Crim.P. 587(b)(4), the trial court stated in its order that Appellant's motion was not frivolous.

***Commonwealth v. Krista*** ("***Krista II***"), 209 A.3d 1068 (Pa.Super. 2019) (unpublished memorandum at 1-2). This Court affirmed and remanded for further proceedings, holding that "the error in this case does not approach the egregious and intentional nature of the conduct required to bar a retrial." ***Id***. (unpublished memorandum at 10). Appellant's petition for allowance of appeal was denied by our Supreme Court. ***See Commonwealth v. Krista*** ("***Krista III***"), 216 A.3d 1035 (Pa. 2019) (*per curiam* order).

Back in the trial court, Appellant filed an omnibus pretrial motion which included another request to bar retrial based upon double jeopardy. The underpinning of the new motion was our Supreme Court's decision in ***Commonwealth v. Johnson***, 231 A.3d 807 (Pa. 2020), in which the Court held that reckless prosecutorial misconduct, in addition to intentional conduct,

may bar a retrial. The trial court denied Appellant's motion, holding that the prosecutor's misconduct did not rise to the level of reckless sabotage that barred retrial under *Johnson*. *See* Order, 3/16/21, at unnumbered 2. The trial court subsequently entered another order denying the motion, this time stating its finding that the motion was not frivolous and advising Appellant that its determination was thus immediately appealable as a collateral order. *See* Order, 3/26/21. *See also* Pa.R.Crim.P. 587(B)(6) ("If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order.").

Appellant filed a timely notice of appeal, and both he and the trial court complied with Pa.R.A.P. 1925. Appellant presents the following questions for our determination:

> Did the trial prosecutor engage in reckless misconduct by impermissibly commenting on [Appellant]'s silence while challenging him to "take the stand and explain what happened" such that the double jeopardy provisions of Article I, Section 10 of the Pennsylvania Constitution bar a fourth trial in this case? If so, did the trial court err by failing to dismiss the charges against [Appellant] and bar retrial?

Appellant's brief at 5.

We begin with our standard of review:

> An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

- 3 -

> Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Sanchez*, 262 A.3d 1283, 1288 (Pa.Super. 2021) (cleaned up).

The Double Jeopardy Clauses of both the federal and Pennsylvania constitutions "protect a defendant from repeated criminal prosecutions for the same offense." *Commonwealth v. Byrd*, 209 A.3d 351, 353 (Pa.Super. 2019) (cleaned up). The purpose of this prohibition against double jeopardy is to prevent the government from making "repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continued state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty." *Commonwealth v. Wilson*, 227 A.3d 928, 936 (Pa.Super. 2020) (cleaned up).

However, subjecting a defendant to a second trial following a mistrial or a successful appeal does not ordinarily offend double jeopardy protections. "Dismissal of criminal charges punishes not only the prosecutor[,] but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law." *Commonwealth v. Burke*, 781 A.2d 1136, 1144 (Pa. 2001) (cleaned up). Accordingly, "dismissal of charges is an extreme sanction that

should be imposed sparingly," only in the most blatant and egregious circumstances. *Id*.

It has long been the case under both state and federal law that a subsequent trial is prohibited when a mistrial resulted from prosecutorial overreaching in the form of intentional misconduct designed to provoke a mistrial. *See*, *e.g.*, *Byrd*, *supra* at 353. In *Commonwealth v. Smith*, 615 A.2d 321 (Pa. 1980), our Supreme Court ruled that Pennsylvania's constitution provides more extensive double jeopardy protections than its federal counterpart, holding that a retrial is impermissible "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." *Id*. at 325. Nonetheless, "*Smith* did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. Rather, the *Smith* court primarily was concerned with prosecution tactics, which actually were designed to demean or subvert the truth seeking process." *Commonwealth v. Lambert*, 765 A.2d 306, 327 (Pa.Super. 2000) (cleaned up).

Our High Court in *Johnson* again augmented the prevailing law, ruling that the Pennsylvania constitution's double jeopardy protections also prohibit retrial if the prosecution acted recklessly. Specifically, the *Johnson* Court held:

> Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy

protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in *Smith*, relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial.

*Johnson*, *supra* at 826 (citation and emphasis omitted). However, the Court made it clear that it is still true that not every instance of error by the Commonwealth requires a finding that retrial is barred:

In reaching our present holding, we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter. To the contrary, we bear in mind the countervailing societal interests . . . regarding the need for effective law enforcement, and highlight again that, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial **overreaching** – which, in turn, implies some sort of conscious act or omission.

*Id*. at 826 (citation omitted, emphasis in original).

The Court explained that prosecutorial overreaching is conduct that reflects a fundamental breakdown in the judicial process where "the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." *Id*. While the "overreaching prerequisite" was abandoned in federal jurisprudence, it remains "firmly entrenched" in Pennsylvania's double jeopardy law. *Id*. at 824 (cleaned up).

An examination of the application of the law to the facts of *Johnson* is instructive. In *Johnson*, a gunman murdered the victim on the street outside a bar, causing the victim's companion to take cover and bystanders to flee. When they arrived, the police recovered a red baseball cap from the middle of

the street a few yards from the victim's body and assigned it a property receipt number. The victim's companion later provided the police with another baseball cap: a black cap that the victim had been wearing which had a bullet hole in it. The black cap was assigned a different property receipt number and was sent to the lab for testing, which revealed the presence of the victim's blood. When Johnson later became a suspect, police submitted his DNA sample to test against the red cap, resulting in a positive match.

Thereafter, the Commonwealth prosecuted the case as if the red cap were the only one, and that it contained both Johnson's DNA and the victim's blood. At trial, the Commonwealth contended that the one hat with both men's DNA was objective, indisputable proof that Johnson was the shooter, and that he fired at the victim from point-blank range. The inaccuracy was further compounded when the police investigator who recovered the red cap from the crime scene informed the jury that he had seen blood on the red cap, and the forensic scientist testified to the presence of Johnson's DNA and the victim's blood on "the" hat. Upon this evidence, Johnson was convicted and sentenced to death.

In post-conviction proceedings, Johnson discovered that two separate caps with different property receipt numbers had been analyzed by the crime lab. The Commonwealth agreed that Johnson was entitled to a new trial. However, Johnson argued that the Commonwealth should be prohibited from retrying him where it had opted to proceed with a capital murder trial without

even ordering a criminalistics report that would have revealed the existence of separate hats, neither of which had the DNA of both Johnson and the victim. The trial court disagreed. The court noted that the detective's testimony about seeing blood was incorrect, that the prosecution's handling of the evidence was "extremely negligent, perhaps reckless," and that the later "exaggeration" of the evidence was "intolerable." *Johnson*, *supra* at 815. However, the court found that the *Smith* standard for barring a retrial had not been met:

> I find that an experienced prosecutor made an almost unimaginable mistake, that it was a mistake which dovetailed with other mistakes that had been made by the officers and the detective in the case, and it produced a trial that was a farce.
>
> The remedy in Pennsylvania for a trial that was a farce, generally, is a new trial. Prosecution is barred under Pennsylvania law only if there are additional elements of intentional misconduct and bad faith on the part of the prosecution, which I do not find to have existed here.

*Id*. at 815-16. This Court affirmed, and our Supreme Court granted discretionary review.

After a thorough examination of existing double jeopardy jurisprudence, the *Johnson* Court ultimately announced the new rule detailed above, namely that double jeopardy bars a retrial not only where the prosecution intentionally violated a defendant's right to a fair trial, but also where that result was caused by prosecutorial misconduct that was undertaken recklessly, *i.e.*, with a conscious disregard for a substantial risk that it would violate the defendant's right to a fair trial.

- 8 -

Applying that rule to the facts before it, the Supreme Court held that the Commonwealth acted recklessly in prosecuting Johnson's case. In so doing, it reiterated the litany of errors: (1) the "notable discrepancy between the property receipt numbers for the two caps" that the prosecutor never attempted to reconcile; (2) the prosecution's decision to proceed to a capital trial without obtaining "a criminalistics report which would have summarized the evidence connected with the matter and revealed that there were two different caps involved;" (3) the fact that the "crucial piece of information" that the victim's friend personally handed the investigator the black cap with a bullet hole in it that the victim had been wearing "was apparently forgotten as the investigation ensued;" (4) the crime scene investigator testified to something that he did not actually observe when he said that he saw blood on the underside of the red cap, as "that would have been impossible;" and (5) the absence of any corroborating photographs of blood on the red cap among those taken from the crime scene "appears not to have been viewed as problematic by anyone associated with the prosecution." *Id*. at 826–27. The Court then concluded that the prosecution's acts and omissions, while not undertaken to intentionally deprive Johnson of a fair trial, amounted to "a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." *Id*. at 827. Consequently, Johnson could not be retried.

With this precedent in mind, we turn to the case *sub judice*. The prosecutorial impropriety at issue is the comment made at the end of the following exchange during defense counsel's cross-examination of police detective Patrick Kinavey:

Q. Detective Kinavey, [the crime] happened on May 11, 2012; correct?

A. That is correct.

Q. And that was a Friday night; correct?

A. Yes.

Q. So one day later was Saturday. Sunday, two days. Monday, three days. Correct?

A. That is correct.

Q. You said it was six days. That's when you recall me having contacted Detective Foley and turned [Appellant] in upon learning that there was a warrant for him? You recall that; don't you?

[Prosecutor]: Objection, Your Honor. [Defense counsel] is testifying.

[Defense Counsel]: I'm asking.

[Prosecutor]: If [Appellant] wants to take the stand and explain what happened, he can.

N.T. Trial, 5/28/14-6/5/14 (Vol. I), at 312.

This Court ruled in **Krista I** that the Commonwealth's comment on Appellant's decision not to testify required a new trial because it violated his Fifth Amendment rights and was not rendered harmless by a delayed curative instruction. **See Krista I**, **supra** (unpublished memorandum at 26).

Appellant's initial double jeopardy motion was considered and rejected under the principles of **Smith** and its pre-**Johnson** progeny. In particular, this Court affirmed the following finding of the trial court:

> I do think that the tensions were high; the parties and counsel were, both of them at that point, let's say, pushing each other's buttons, and while it was not a proper response, it was not a response calculated to create a mistrial or deny a fair trial, but rather an improper statement made out of frustration with defense counsel's questioning.

**Krista II**, **supra** (unpublished memorandum at 10) (emphasis omitted) (quoting N.T., 12/8/17, at 22-25). Hence, it is the law of this case that the prosecution neither intended to provoke Appellant into moving for a mistrial nor acted with the intent to prejudice Appellant to the point of denying him a fair trial. Consequently, the only question in this appeal is whether **Johnson**'s holding compels a different result.

The trial court answered that question in the negative because it "found no evidence of a conscious act that would rise to the level of recklessness." Trial Court Opinion, 5/14/21, at 4. The court made the specific factual finding the prosecutor's statement was spontaneous rather than the result of a deliberative process. **Id**. This lack of a considered disregard of the impact his comment would have on the fairness of the trial rendered this case materially different from **Johnson**. As the court explained: "As distinguished from **Johnson**, where the prosecutor had the luxury of time to prepare and chose to ignore red flags that would have uncovered a material evidentiary

error, the prosecutor here had no time to reflect upon the wisdom of his statement." *Id*. at 5.

Appellant argues that the trial court's analysis is "intellectually untenable," and that "[t]he only reasonable inference that may be gleaned from the instant circumstances is that [the prosecutor] acted recklessly in violating [Appellant]'s constitutional rights after twice failing to convict him." Appellant's brief at 55. Appellant suggests that adopting the trial court's reasoning amounts to recognizing "an 'oops' exception" to misconduct, which will permit prosecutors to avoid the consequences of impropriety when they are "experiencing moments of frustration, in the heat of debate, and under pressure to secure a conviction[.]" *Id*. at 58.

Appellant notes that the prosecutor in this case was, and expressly touted himself to be, an experienced prosecutor, and that he particularly knew or should have known that Appellant would exercise his right not to testify, just as he had in the prior two trials. *Id*. at 47, 60. Since a veteran prosecutor "undeniably knows better than to comment on a defendant's constitutional right to remain silent," the prosecutor's "disregard for the substantial risk that an unfair trial would result from such a comment can only be characterized as conscious disregard." *Id*. at 30. Appellant further posits that the prosecutor's "immediate concession that he committed misconduct . . . coupled with his immediate effort to remediate his error" by suggesting a curative instruction, "provides ample evidence that his disregard for the substantial and

unjustifiable risk that an unfair trial would result was conscious, rather than 'unconsciously inadvertent[,]'" as the trial court concluded. *Id*. at 61-62.

In sum, Appellant's position is that the record demonstrates that the prosecutor "knew before, during, and after making the comment that his comment was constitutionally intolerable and that making it risked doing very real violence to [Appellant's] right to a fair trial. He made the comment anyway." *Id*. at 62.

We are unpersuaded by Appellant's arguments. Initially, we note that the analysis of the mental process of the prosecutor that Appellant imagines[1] is intellectually untenable, as what Appellant describes is not recklessness, but intentional misconduct. Appellant's theory of what transpired in the prosecutor's consciousness is not recognition, then disregard, of a possibility that he might violating Appellant's rights. Such would be found where a prosecutor contemplates that a statement probably will cross the line, but decides to say it anyway rather than undertake further research or deliberation. Instead, Appellant posits that the prosecutor thought: "I know this is wrong to say because it violates Appellant's right to a fair trial, but I am going to say it anyway," and then made his remark. Such would be an

---

[1] We observe that this Court, in explaining that the certified record established neither the egregiousness nor the intentionality to warrant barring a retrial under pre-***Johnson*** law, rejected similar "speculation" by Appellant about the prosecutor's internal cognition. **See *Krista II*, *supra*** (unpublished memorandum at 10).

**intentional** violation of Appellant's rights. It is the law of the case that no intentional violation occurred here.

Nor is Appellant's reasoning sound regarding the import of the prosecutor's "immediate effort to remediate his error" by suggesting a curative instruction. The quick grasp of an error after it happened plainly does not necessarily reflect pre-awareness that the error was about to be made and a conscious decision to make it nonetheless. Further, the prosecutor's prompt concession that he had erred and desire to mitigate the damage, if anything, militates against deeming the misconduct sufficient to bar retrial. *See Commonwealth v. Turner*, 245 A.3d 1034, 2020 WL 7663840 at *5-*6 (Pa.Super. 2020) (non-precedential decision) (holding *Johnson* did not bar retrial where an officer was unaware that the prosecutor did not have supplemental report, the prosecutor did not have access to the report until the trial date, and, unlike in *Johnson*, "the record reflects the Commonwealth's diligence in discovering its error and promptly correcting it").

Moreover, in attempting to circumnavigate the prior double-jeopardy ruling by recasting as reckless what he has all along maintained was an intentional violation, Appellant loses sight of the fact that, regardless of the *mens rea* involved, "in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial overreaching[.]" *Johnson*, *supra* at 826 (emphasis omitted). Appellant's arguments focus on the topic of recklessness versus unconscious inadvertence

without providing significant discussion of whether what the prosecution recklessly or inadvertently did here satisfies what the **Johnson** court deemed the "overreaching prerequisite." **Id**. at 824. Indeed, Appellant's advocacy appears to be premised on the idea that the existence of overreaching is a given, and it is just a matter of whether that overreaching was done recklessly. That is simply not the case.

As mentioned above, overreaching is conduct that reveals a fundamental breakdown in the judicial process where "the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." **Id**. at 826. Examples of overreaching, in addition to the farcical string of errors and omissions in **Johnson**, are the prosecution's "consistently making reference to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections, and . . . repeatedly insisting that there was fingerprint evidence linking [the defendants] to the crime when the prosecutor knew for a fact that no such evidence existed," **Commonwealth v. Martorano**, 741 A.2d 1221, 1223 (Pa. 1999); and contacting a defense witness to intimidate her and prevent her from testifying, **Byrd**, **supra** at 359. In such scenarios, it is clear that the prosecutor made conscious decisions, be they intentional malfeasance or a failure to heed red flags signaling an unintentional error, to place getting a favorable verdict ahead of the defendant's rights.

As this Court discussed in *Krista II*, even where a prosecutor engages in willful misconduct, double jeopardy protections do not necessarily prohibit a new trial. Rather, "retrial should be barred when the prosecutor's misconduct is an act of deliberate overreaching and not an isolated incident." *Krista II*, *supra* (unpublished memorandum at 7). Updated to reflect *Johnson*, the principle can be rephased as retrial should be barred when the prosecutor's misconduct is an act of deliberate or reckless overreaching and not an isolated incident.

The last time we rejected Appellant's double jeopardy motion, this Court held that Appellant was not immunized against a subsequent trial because "the error in this case does not approach the egregious and intentional nature of the conduct required to bar a retrial." *Krista II*, *supra* (unpublished memorandum at 10). In other words, the prosecutor's misconduct here was neither intentional nor close to qualifying as the type of "overreaching" necessary to grant Appellant the requested relief. Nothing in *Johnson* changes the overreaching calculus.

The single spontaneous outburst at issue in this case is far from the "almost unimaginable mistakes, which dovetailed with other serious errors by law-enforcement officers and other police personnel," which led to the conclusion that the prosecution had operated with "a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." *Johnson*, *supra*

- 16 -

at 827. What we are faced with in this case is unquestionably an improper act, but not one undertaken to gain an advantage for the prosecution or to forge blindly forward towards a conviction by "subvert[ing] the truth seeking process." *Lambert*, *supra* at 327 (cleaned up). Therefore, we hold that, even if we agreed with Appellant that the prosecutor's improper statement was made recklessly, it did not amount to the overreaching that bars a subsequent trial.

Finally, we reject Appellant's contention that allowing retrial in this case amounts to "an 'oops' exception" that would render the right established by the Double Jeopardy Clause to become "an empty, illusory right" and permit prosecutors to avoid repercussions for failing "to think carefully before speaking." Appellant's brief at 58-59. First, Appellant's very characterization of the spontaneous utterance here as an "oops" suggests a complete lack of the "conscious disregard" necessary to constitute recklessness. We again remind Appellant that not even all intentional, willful misconduct is sufficiently egregious to constitute the overreaching that precludes further prosecution.

Second, at oral argument, Appellant was unable to proffer an example of an improper statement that would, under Appellant's interpretation of the law, constitute mere negligence rather than, at a minimum, recklessness. The *Johnson* decision did not alter the long-standing principle that "dismissal of charges is an extreme sanction that should be imposed sparingly." *Johnson*, *supra* at 828 (Dougherty, J. concurring) (citing *Burke*, *supra* at 1144). In

other words, retrial remains the general rule, and double jeopardy dismissal is still the exception. Adoption of Appellant's legal position would have the exception swallow the rule.

Finally, the Commonwealth did not escape consequences for the prosecutor's misconduct: Appellant's conviction was overturned. To trigger the extreme repercussion of a bar to retrial, Appellant was obligated to show more, namely proof of overreaching, whether it was intentionally or merely recklessly caused. The following succinctly explains our determination that the trial court properly concluded that the prosecution's single improper statement warranted the ordinary sanction for misconduct rather than the extreme sanction of dismissal based upon double jeopardy:

> The prosecutor's act . . . was deplorable and certainly such misconduct must be discouraged in a quasi-judicial officer whose sworn duty is to seek justice rather than narrow-mindedly pursue convictions. Appellant is entitled to relief, which he received in the form of a new trial. However, in deciding whether we must go that further step and discharge appellant on double jeopardy grounds, we must remember the admonition [that] the remedy in the criminal proceeding is limited to denying the prosecution the fruits of its transgression. The Commonwealth was denied the fruits of its transgression when the tainted verdict of guilty was struck down by the grant of a new trial. The question before us is not whether the prosecutor's act was wrong; it has already been decided that it was. The question is whether the prosecutor's act was of the type which the Double Jeopardy Clause was meant to prevent; this we hold it was not.

***Commonwealth v. Simons***, 492 A.2d 1119, 1126 (Pa.Super. 1985), *aff'd*, 522 A.2d 537 (Pa. 1987).

Therefore, because we are convinced neither (1) that trial court's finding that the prosecutor's improper statement was the result of frustrated inadvertence rather than recklessness is insufficiently supported by the certified record, nor (2) that the impropriety here rose to the level of overreaching necessary to trigger double jeopardy immunity, we affirm the trial court's order denying Appellant's second motion to bar retrial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/4/2022