J-A02029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| TRAVIS LEE DEVAULT | : | |
| Appellant | : | No. 1260 WDA 2021 |

Appeal from the Order Entered January 6, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at CP-02-CR-0002250-2018

BEFORE:   BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                      **FILED:FEBRUARY 24, 2023**

Travis Lee DeVault (Appellant) appeals from the order denying his motion to dismiss based on double jeopardy.[1]  After careful review, we affirm.

The trial court detailed the convoluted history of this case in its opinion. ***See*** Trial Court Opinion, 3/15/22, at 1-5.  Pertinently, on April 2, 2018, the Commonwealth charged Appellant with rape of a child, involuntary deviate sexual intercourse with a child, unlawful contact with minors, incest of a minor, sexual assault, dissemination photo/film of a child sex act, child pornography,

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This appeal is proper pursuant to Pa.R.Crim.P. 587(b)(6) ("If the judge denies the motion [to dismiss on double jeopardy grounds,] but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order.").  ***See*** Order, 1/6/21 ("This Order is immediately appealable as a collateral order.").

sexual exploitation of children, promoting prostitution of a minor, endangering the welfare of a child, indecent exposure, and corruption of minors.[2] The charges arose from Appellant's abuse of his daughter (the Victim). ***See*** Criminal Information, 4/2/18, at 1-3 (unnumbered).

The trial court convened a jury trial on June 18, 2019. The Commonwealth subpoenaed Appellant's former girlfriend, Tiffanie Marshall, to testify. N.T., 6/18-19/19, at 3-4; 12. Ms. Marshall (who had been released on bond and was awaiting trial in an unrelated matter) was under the influence of drugs when she came to court. ***Id.*** at 4. She was detained overnight and testified the next day. ***See id.*** at 5-12. During direct examination, the Commonwealth asked about events that occurred on October 31, 2017:

> Q. … What did [Appellant] say to you on October 31, 2017?
>
> A. Should I go into the whole story? I'm sorry, I don't know how to clarify exactly what happened. He had just gotten off house arrest a few days before and we went drinking.
>
> [Defense Counsel]. Can we approach?

***Id.*** at 25.

Defense counsel requested a mistrial based on Ms. Marshall's mention of Appellant being on house arrest. The trial court denied the motion, but issued a cautionary instruction to the jury that Ms. Marshall had

---

[2] 18 Pa.C.S.A. §§ 3121(c), 3123(b), 6318(a)(1), 4302(b)(1), 3124.1, 6312(c), 6312(d), 6320(a), 5902(b.1)(5), 4304(a)(1), 3127(a), and 6301(a)(1)(ii).

- 2 -

misconstrued and used a term [she should not have and] should not impact you in any way. In other words, you cannot assume from what she just said that this defendant, who is absolutely presumed innocent, was ever actually in truly a house arrest situation.

*Id.* at 26-30. The trial court also directed the Commonwealth to caution its witnesses "not to mention anything about those words or incarceration or anything like that." *Id.* at 25-27.

The Commonwealth resumed its examination of Ms. Marshall, who testified that Appellant asked her to "show [the Victim] how to perform oral sex because when [the Victim] has sex [with Appellant] she just lays there." *Id.* at 31. The Commonwealth continued:

Q. You said [Appellant] actually told you that he had sex with his daughter []?

A. Yes.

Q. Do you remember when he told you this?

A. Yes.

Q. When was this?

A. October 31, 2017.

Q. How do you remember that date?

A. I'll never forget it for the rest of my life.

Q. Why?

A. Because it was very traumatic.

Q. Where were you when [Appellant] told you he had sex with his daughter?

A. In our bedroom on our bed after **he just forced me to have sex with another man.**

Q. Who was the other man?

A. I'm not sure, some guy he got off of Craig's List.

*Id.* at 33 (emphasis added).

Defense counsel again moved for mistrial, stating that Ms. Marshall was "going into [Appellant's prior] uncharged bad acts about which I have no discovery." *Id.* at 34. The trial court agreed and granted a mistrial. *Id.* at 36.

After numerous delays, *see* Trial Court Opinion, 3/15/22, at 3-4, the case was reassigned to a different judge. Appellant thereafter filed his motion to dismiss on double jeopardy grounds. The court held an evidentiary hearing on December 5, 2020. On January 6, 2021, the trial court issued its order denying relief, along with findings of fact and conclusions of law. After further delay, Appellant filed this *nunc pro tunc* appeal.[3]

Appellant presents one issue for review:

Did the trial court err in denying [Appellant's] motion to dismiss on double jeopardy grounds, where the Commonwealth's conduct, including refusing to prepare a volatile witness and, after the witness volunteered inadmissible, inflammatory, and prejudicial information that [Appellant] had subjected her to rape by another

---

[3] Due to changes in counsel, a brief period when Appellant was proceeding *pro se*, and the failure of prior counsel to inform Appellant of the trial court's order denying his motion, the trial court reinstated Appellant's right to appeal *nunc pro tunc*. *See* Trial Court Opinion, 3/15/22, at 4-5. Appellant and the trial court have complied with Pa.R.A.P. 1925.

man, asking for more details about the rape, [which] evinces intentional conduct that recklessly caused a mistrial?

Appellant's Brief at 4.

We begin by recognizing:

An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Sanchez*, 262 A.3d 1283, 1288-89 (Pa. Super. 2021) (citations omitted).

Although our review is not "blindly deferential" to the trial court's credibility determinations, we appreciate that a "fact-finder who hears witness testimony first-hand is able to take into account not only the words that are spoken and transcribed, but the witnesses' demeanor, tone of voice, mannerisms, and the like." *Commonwealth v. Johnson*, 231 A.3d 807, 818 (Pa. 2020) (citations omitted).

Recently, this Court discussed retrial following the grant of mistrial due to prosecutorial misconduct. We explained:

It has long been the case under both state and federal law that a subsequent trial is prohibited when a mistrial resulted from

prosecutorial overreaching in the form of intentional misconduct designed to provoke a mistrial. In **Commonwealth v. Smith**, [] 615 A.2d 321 ([Pa.] 1992), our Supreme Court ruled that Pennsylvania's constitution provides more extensive double jeopardy protections than its federal counterpart, holding that a retrial is impermissible "not only when prosecutorial misconduct is intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." **Id**. at 325. Nonetheless, "**Smith** did not create a *per se* bar to retrial in all cases of intentional prosecutorial overreaching. Rather, the **Smith** [C]ourt primarily was concerned with prosecution tactics, which actually were designed to demean or subvert the truth seeking process." **Commonwealth v. Lambert**, 765 A.2d 306, 327 (Pa. [ ] Super. 2000) (cleaned up).

Our High Court in **Johnson** again augmented the prevailing law, ruling that the Pennsylvania constitution's double jeopardy protections also prohibit retrial if the prosecution acted recklessly. Specifically, the **Johnson** Court held:

> Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in **Smith**, relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial.

**Johnson**, **supra** at 826 (citation and emphasis omitted). However, the Court made it clear that … not every instance of error by the Commonwealth requires a finding that retrial is barred:

> In reaching our present holding, we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter. To the contrary, we bear in mind the countervailing societal interests ... regarding the need for effective law enforcement, and highlight again that, in

- 6 -

accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial **overreaching** – which, in turn, implies some sort of conscious act or omission.

*Id*. at 826 (citation omitted, emphasis in original).

The Court explained that prosecutorial overreaching is conduct that reflects a fundamental breakdown in the judicial process where "the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." *Id*. While the "overreaching prerequisite" was abandoned in federal jurisprudence, it remains "firmly entrenched" in Pennsylvania's double jeopardy law.

*Commonwealth v. Krista*, 271 A.3d 465, 469–70 (Pa. Super. 2022) (some citations omitted, emphasis in original). For prosecutorial misconduct to prohibit retrial on double jeopardy, the misconduct must be "an act of deliberate or reckless overreaching and not an isolated incident." *Id.* at 474.

Appellant argues the trial court erred in denying his motion to bar retrial because the Commonwealth's conduct, "viewed as a whole, evinces intentional conduct that recklessly caused a mistrial." Appellant's Brief at 13. He maintains the prosecutor refused "to prepare [Ms.] Marshall's testimony, refus[ed] to take corrective action when [Ms. Marshall] volunteered inadmissible, inflammatory, and prejudicial information, and, ultimately compound[ed] its prejudice by affirmatively asking for more evinces [*sic*] at least recklessness as to causing a mistrial."[4] *Id.*

_____

[4] Appellant abandoned the claim he presented to the trial court in which he alleged Commonwealth misconduct for failing to disclose the alleged

*(Footnote Continued Next Page)*

The trial court concluded the Commonwealth did not "engage[] in prosecutorial misconduct that necessitates the relief requested." Trial Court Opinion, 1/6/21, at 9. The trial court explained:

The evidence does not support that the Commonwealth was aware of this uncharged conduct prior to Ms. Marshall taking the witness stand. There was no testimony offered, including from Ms. Marshall herself, that this allegation of forced sex was ever relayed to the Commonwealth at any time during either the investigation or leading up to the trial. On June 19, 2019[,] Ms. Marshall was provided an opportunity to review the police report generated by the Allegheny County Police of her interview regarding the events of October 31, 201[7]. Although the report details that [Appellant] and Ms. Marshall engaged in sexual activity with a male who they met on Craig's List on October 31, 201[7], a review of Commonwealth's Exhibit 1 does not indicate that any of the sexual activity was forced. Furthermore, when given the opportunity, she did not offer any corrections or additions to this statement in advance of her testimony. Moreover, the answer provided by Ms. Marshall that precipitated the mistrial was non-responsive to the Commonwealth's question, such that there is no evidence that the Commonwealth sought to elicit this prejudicial testimony. It became apparent during argument that [defense] counsel for [Appellant], when confronted with the evidence presented at this hearing[,] did not believe the Commonwealth knew in advance of trial that Ms. Marshall would have testified to this uncharged conduct and that under those circumstances it may not have resulted in a mistrial. The Commonwealth may have erred by its failure to recognize or appreciate the prejudicial nature of Ms. Marshall's response prior to asking the follow-up question. However, prosecutorial error does not satisfy the standard to allow for the relief requested.

*Id.* at 9-10 (footnote omitted).

_____

inducement of Ms. Marshall's testimony. **See** N.T., 12/5/20, at 179-83; Appellant's Brief at 14-26; Trial Court Opinion, 1/6/21, at 6.

The record supports the trial court's conclusion that the prosecutor did not engage in the type of "reckless overreaching" which bars retrial. ***See***, ***e.g.***, N.T., 6/18-19/19, at 36 (prosecutor stating she "had no way of knowing that the witness would use the word force."); ***see also Krista***, 271 A.3d at 473-75. Thus, we are not persuaded by Appellant's argument that the trial court erred in denying his motion to dismiss on double jeopardy grounds.

Order affirmed. Case remanded for retrial. Jurisdiction relinquished.

Judge Pellegrini joins the memorandum.

Judge Bowes concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2023