J-S14044-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAYQUAN DANZEL ROBISON | : | |
| | : | |
| Appellant | : | No. 1289 WDA 2022 |

Appeal from the Order Entered October 28, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002177-2021

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED: June 29, 2023**

Dayquan Danzel Robison (Robison) appeals from the order entered in the Court of Common Pleas of Erie County (trial court) denying his motion to bar retrial based on double jeopardy in this firearms violation case.  Robison contends that the Commonwealth should be barred from retrying him after a mistrial was declared at his first trial because of the prosecutor's discovery violation.  We affirm.[1]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] This interlocutory appeal is properly before us pursuant to Pennsylvania Rule of Criminal Procedure 587.  **See** Pa.R.Crim.P. 587(b)(6) ("If the judge denies the motion but does not find it frivolous, the judge shall advise the defendant on the record that the denial is immediately appealable as a collateral order.").

**I.**

**A.**

The relevant facts and procedural history of this case are as follows. On June 24, 2021, Detective Christopher O'Connell and Patrolman Nicholas Strauch of the City of Erie Police Department stopped Robison's vehicle for a traffic violation. Robison told the officers that there was a firearm in the glove compartment and that he was transporting it to his mother's home. Officer Strauch took custody of the firearm, which was loaded with bullets in the chamber and in the magazine. A records check showed that Robison's concealed carry permit had been revoked. Robison was charged with one count of firearms not to be carried without a license.[2]

At issue in this appeal is the Commonwealth's failure to timely provide defense counsel with a copy of a letter from the Erie County Sheriff's Office addressed to Robison dated May 18, 2021, indicating that his firearms permit had been revoked because of a DUI violation. Before jury selection began at Robison's September 15, 2022 trial, Assistant District Attorney (ADA) Michael E. Burns, Esq., provided defense counsel with a functionality report for the

---

[2] 18 Pa.C.S. § 6106(a)(1). "In order to convict a defendant for carrying a firearm without a license, the Commonwealth must prove that the weapon was a firearm; that the firearm was unlicensed; and that where the firearm was concealed on or about the person, it was outside his home or place of business." **Commonwealth v. Muhammad**, 289 A.3d 1078, 1090 (Pa. Super. 2023) (citation omitted).

firearm that had been prepared the day before, but failed to give counsel a copy of the letter at issue.

During an in-chambers meeting, the parties and the trial court discussed whether a *mens rea* culpability requirement applies to Section 6106 with respect to the non-licensure of the firearm. ADA Burns argued that the Commonwealth was not obligated to establish *mens rea* and that he would object to any testimony to that effect as irrelevant. (**See** N.T. Trial, 9/15/22, at 16). Defense counsel disagreed, relying on this Court's decision in **Commonwealth v. Scott**, 176 A.3d 283 (Pa. Super. 2017). In **Scott**, this Court considered whether the Commonwealth must establish *mens rea* for the element of concealment in order to obtain a carrying a firearm without a license conviction under Section 6106, although the statutory language does not include an express scienter requirement with respect to any of its elements. The Court observed that our Supreme Court has held that "[section] 302 provides the default level of culpability where a criminal statute does not include an express *mens rea*." **Scott**, **supra** at 290 (citation omitted).[3] The **Scott** Court held with regard to Section 6106 that because there is no indication the legislature intended to impose strict liability for the

_____

[3] Section 302 of the Crimes Code states: "**Culpability required unless otherwise provided.**—When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." 18 Pa.C.S. § 302(c).

crime, "the Commonwealth must establish that a defendant acted intentionally, knowingly or recklessly with respect to each element" of Section 6106. *Id*. (citation omitted).

After considering the parties' arguments on the scienter requirement, the trial court made a preliminary ruling in favor of the defense and it affirmed its decision before opening statements. (*See* N.T. Trial, at 16-17). The Commonwealth called its only two witnesses, Officers O'Connell and Strauch. During cross-examination of Officer Strauch by defense counsel, the following exchange took place:

> Q: And when a person, their license is revoked, are you aware if Mr. Robison received written notice from either the sheriff's department or the treasurer about that?
>
> A: I don't know the absolute inner workings of it. I know that reports are submitted for revocation . . . It's reviewed and then they provide a certified mail to that person. That's all I can testify to.[4]
>
> Q: Okay. And you don't know if on June 24th if prior to that date Mr. Robison was served that notice. Correct?
>
> A: All I know is on that date when I checked in my computer, he was revoked.
>
> Q: Right. But you aren't aware of whether or not he got a letter saying that. Correct?
>
> A: I don't do that kind of work, so I wouldn't know.

---

[4] We note that this procedure is consistent with the relevant statutory provision requiring that when an individual's license to carry a firearm is revoked, notice of revocation be sent by certified mail to that person. *See* 18 Pa.C.S. § 6109(i).

Q: And as part of your investigation, you didn't get a copy of that notice. Correct?

A: From the Sheriff's department?

Q: Or the treasurer?

A: I have a copy from the sheriff's department.

Q: I'm sorry?

A: We have a copy from the sheriff's department.

Q: Of the notice?

A: That was sent. Correct.

Q: Okay. And that was provided to the District Attorney's Office?

A: Yesterday.

(*Id.* at 64-65).

Defense counsel advised the trial court that she had not received this document and asked for a recess to review it. The court asked ADA Burns why this "clearly relevant" letter was not provided to the defense and he responded: "Well, I apologize for that. This morning Officer [Strauch] brought it in and said this is—I've heard through the grapevine that their defense is going to be that he didn't know that he didn't have a permit. . . . [M]y position was that it's not relevant. Of course, Your Honor has just ruled to the contrary . . . This whole issue of *mens rea* has come up at the last minute and frankly it's got me a little off guard. I think I didn't realize that

was going to be an issue." (**Id.** at 68-69). Defense counsel made a motion for a mistrial, which the trial court granted.

**B.**

Robison filed a motion to bar retrial on grounds of double jeopardy. At the October 27, 2022 hearing, defense counsel asserted that ADA Burns had been alerted to her theory that Robison was unaware of the license revocation and that the Commonwealth's withholding of the letter was intentional. The defense also emphasized that after the mistrial, the Commonwealth obtained additional evidence in the form of the potential testimony of Corporal Robert Wolf from the Erie County Sheriff's Department regarding the notice revocation. (**See** N.T. Hearing, 10/27/22, at 13-16). ADA Burns conceded that he should have provided the letter to the defense and apologized for failing to do so, but strongly disputed the allegation that he deliberately withheld evidence for the purpose of gaining a strategic advantage. ADA Burns averred that he would not risk his reputation or integrity by intentionally withholding the letter, and that he went to the Sherriff's Office after the mistrial because he realized there was information that he did not have that he was aware of the *mens rea* requirement. (**See id.** at 16-20).

The trial court denied the motion to bar retrial and concluded that, although the letter should have been provided to the defense as soon as the Commonwealth obtained it, and Robison is entitled to a new trial because of this discovery violation, the circumstances of this case do not warrant barring

retrial. (*See* Trial Court Opinion, 12/15/22, at 3-4). It found that ADA Burns' failure to provide the letter was not done with the intent to cause a mistrial or with maliciousness to sabotage the defense, and noted that he was quick to acknowledge his error and accept responsibility. (*See id.* at 4; *see also* N.T. Hearing, at 22). Robison timely appealed and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b).

## II.

On appeal, Robison challenges the trial court's denial of his motion to bar retrial based on double jeopardy.[5] Robison's argument is two-fold, as he first contends that the Commonwealth acted intentionally in withholding the revocation letter in order to ambush defense counsel during trial. Robison maintains that although ADA Burns was aware of the trial court's ruling on the *mens rea* requirement before opening statements, he nonetheless provided the defense with only the firearm functionality report and is now in a better position to prove his case with the additional testimony of Corporal Wolf. (*See* Robison's Brief, at 9-18). Alternatively, Robison claims that even if the prosecution's actions in this case were unintentional, ADA Burns' reckless

---

[5] Because Robison's issue raises a question of law, our scope of review is plenary and our standard of review is *de novo*. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1288 (Pa. Super. 2021). "To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings." *Id.* (citation omitted). "Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court." *Id.* (citation omitted).

conduct in failing to provide the evidence deprived him of a fair trial such that retrying him would violate double jeopardy. (*See id.* at 19-20).

We begin by observing that the double jeopardy clauses of the United States and Pennsylvania Constitutions protect a defendant from repeated criminal prosecutions for the same offense. *See Commonwealth v. Wilson*, 227 A.3d 928, 936 (Pa. Super. 2020). The purpose of this prohibition against double jeopardy is to prevent the government from making "repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continued state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty." *Id.* (citation omitted).

However, subjecting a defendant to a second trial following a mistrial does not ordinarily offend double jeopardy protections. *See Commonwealth v. Krista*, 271 A.3d 465, 469 (Pa. Super. 2022), *appeal denied*, 285 A.3d 597 (Pa. 2022). This is because the "dismissal of criminal charges punishes not only the prosecutor, but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law." *Id.* (citation omitted). Accordingly, "dismissal of charges is an extreme sanction that should be imposed sparingly, only in the most blatant and egregious circumstances." *Id.* (citation omitted).

In ***Commonwealth v. Johnson***, 231 A.3d 807 (Pa. 2020), our Supreme Court emphasized that a determination of prosecutorial overreaching is necessary to trigger double jeopardy protections in the context of a mistrial. It held:

> Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections **includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result**. **This, of course, is in addition to the behavior . . . relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial**. In reaching our present holding, we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter. To the contrary, we bear in mind the countervailing societal interests mentioned above regarding the need for effective law enforcement, and highlight again that, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is **prosecutorial overreaching**— which, in turn*,* **implies some sort of conscious act or omission**. Notably, however, this Court has explained, albeit in a different context, that reckless conduct subsumes conscious behavior. ***See Tayar v. Camelback Ski Corp., Inc.***, 616 Pa. 385, 402, 47 A.3d 1190, 1200 (2012) (indicating that recklessness, as distinguished from negligence, "requires conscious action or inaction which creates a substantial risk of harm to others").

***Id.*** at 826 (some citations omitted; emphasis added).

Immunity from retrial is, therefore, warranted when there is "a fundamental breakdown in the judicial process where the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." ***Krista***, ***supra*** at 470. Findings of prosecutorial overreach have been made in cases where the Commonwealth was "consistently making

reference to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections, and repeatedly insisting that there was fingerprint evidence linking the defendants to the crime when the prosecutor knew for a fact that no such evidence existed." *Id.* at 474 (citation omitted). "In such scenarios, it is clear that the prosecutor made conscious decisions, be they intentional malfeasance or a failure to heed red flags signaling an unintentional error, to place getting a favorable verdict ahead of the defendant's rights." *Id.* Stated another way, "retrial should be barred when the prosecutor's misconduct is an act of deliberate or reckless overreaching and not an isolated incident." *Id.*

Instantly, we conclude that the prosecutor's misconduct here was neither intentional nor qualified as the type of overreaching necessary to grant Robison the requested relief. Although the Commonwealth made a blatant discovery violation in failing to immediately provide defense counsel with the revocation letter, the record does not show that ADA Burns did this to gain an unfair advantage for the prosecution. Instead, the record reflects that ADA Burns made the mistake as a result of his unpreparedness for the *mens rea* ruling and not in an attempt to "seek[] conviction at the expense of justice." *See Krista*, *supra* at 470.

In sum, the failure to provide the letter did not amount to the overreaching that bars a subsequent trial. Robison did receive relief in the form of a new trial but he is not entitled to discharge on double jeopardy

grounds. Therefore, because the impropriety here did not rise to the level of overreaching necessary to trigger double jeopardy immunity, we affirm the trial court's order denying Robison's motion to bar retrial.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2023