J-A09018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MATIA SMITH | : | |
| | : | |
| Appellant | : | No. 1200 WDA 2024 |

Appeal from the Order Entered September 5, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0000171-2024

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED: July 10, 2025**

Appellant Matia Smith appeals from the order denying her motion to dismiss based on double jeopardy.[1]  Appellant argues that the trial court erred when, after declaring a mistrial, it did not grant Appellant's motion to dismiss where the Commonwealth failed to disclose and provide evidence to Appellant until after opening statements and the beginning of direct examination of the first witness.  After careful review, we affirm.

---

[1] We note that an order denying a motion to dismiss based on double jeopardy, where the trial court does not find the motion frivolous, is immediately appealable as an appeal from a collateral order.  ***See*** Pa.R.Crim.P. 587(b)(6); Pa.R.A.P. 313, cmt. (citing ***Commonwealth v. Brady***, 508 A.2d 286, 289-91 (Pa. 1986) (allowing an immediate appeal from the denial of a motion to dismiss based on double jeopardy under the collateral order doctrine where the trial court does not make a finding of frivolousness)).  Here, after the trial court declared a mistrial, and it subsequently denied Appellant's motion to dismiss and expressly concluded that the motion was not frivolous.  ***See*** Order, 9/5/24.  Accordingly, this appeal is properly before this Court.  ***See*** Pa.R.Crim.P. 587(b)(6); Pa.R.A.P. 313, cmt.; ***Brady***, 508 A.2d at 289-91.

The trial court summarized the relevant facts and procedural history of this matter as follows:

On June 5, 2024, [Appellant] proceeded to a jury trial on a four (4) count information which charged the following offenses: aggravated assault, 18 Pa.C.S. § 2702(a)(4); obstructing administration of law or other government function, 18 Pa.C.S. § 5101; and two (2) counts of criminal mischief, 18 Pa.C.S. § 3304(A)(5).

On June 5, 2024, during the first day of trial, the Commonwealth became aware of additional evidence that had not been provided to [Appellant] as part of discovery. Specifically, approximately forty-three (43) minutes of body worn camera footage from an initial responding officer. Upon informing defense counsel and the court, the jury was recessed for the day, and the parties were ordered to review the footage and address the court the following morning. The court also reviewed the relevant video footage. On June 6, 2024, [Appellant] requested a mistrial and the parties presented argument. The court declared a mistrial, explaining this new evidence contained relevant information from the crime scene, transpiring in real time, that could potentially assist the fact finder and/or effect defense strategy. [Appellant] also filed a companion motion to dismiss which is the subject of the present findings and disposition.

On August 21, 2024 an evidentiary hearing was held wherein two witnesses were called, City of Pittsburgh Police Officer Ronald Postell and Assistant District Attorney (ADA) Andrew Belack. Officer Postell testified that he responded to an assault call which led to the underlying charges against [Appellant]. His body worn camera (BWC) was activated and recorded the events that occurred on scene. (Hearing Transcript, August 21, 2024, p. 10). This will be referred to as "scene footage." Officer Postell's BWC was deactivated after [Appellant] was arrested and transported to a hospital and was later reactivated at the hospital after [Appellant] became combat[ive]. (*Id.* at 11). This will be referred to as "hospital footage."

Officer Postell explained that pursuant to police department policy, he uploaded both videos and submitted a form to the department's Computer Operations after the preliminary hearing. This form indicates what persons or agencies are to receive BWC

footage. (***Id.*** at 8-9). He stated that prior to trial, although he had informal conversations with ADA Belack generally about BWC footage, they did not discuss specific footage. (***Id.*** at 18). This was echoed by ADA Belack during his testimony. (***Id.*** at 44). Consequently, it was not until after the trial began on June 5, 2024, when Officer Postell was reviewing his BWC footage in preparation to testify, that it became apparent that the District Attorney's Office had his hospital footage but not his scene footage. (***Id.*** at 14-16). He informed ADA Belack of this issue, who then immediately informed defense counsel and the court. Officer Postell testified that he later learned that the police department implemented a policy change around the time of this incident, regarding video distribution. The new policy, which he did not comply with, requires individual officers to now upload and transmit video footage directly to the District Attorney's Office. (***Id.*** at 23-26).

ADA Belack has been employed with the Allegheny County District Attorney's Office for four (4) years. (***Id.*** at 27). He testified that the District Attorney's Office uses a portal called evidence.com to retrieve both BWC and dash camera footage that has been uploaded and shared by the City of Pittsburgh Police Department. (***Id.*** 29). In this case, ADA Belack stated he was only aware of three (3) BWC videos through evidence.com related to [Appellant's] case and provided those during the discovery process. (***Id.*** at 31, 33-34; Commonwealth Exhibits 1-3). ADA Belack denied any knowledge of a fourth video, aka [the] scene footage, or any effort to conceal this evidence from [Appellant]. (***Id.*** at 38-40).

Findings of Fact and Conclusions of Law, 9/5/24, at 1-3 (some formatting altered). The trial court concluded that the Commonwealth's failure to provide the missing video, while negligent, did not amount to recklessness, and therefore, the trial court denied Appellant's motion to dismiss. ***Id.*** at 5. Appellant filed a timely appeal.[2]

_____

[2] The record does not reflect that the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P.
*(Footnote Continued Next Page)*

On appeal, Appellant raises the following issue:

Whether the trial court must dismiss the case after a declaration of a mistrial when the Commonwealth waited until after opening statements and the start of direct examination of the first witness before turning over material evidence to the defense?

Appellant's Brief at 4 (formatting altered).

Appellant argues that the Commonwealth's failure to provide discovery amounts to reckless prosecutorial misconduct. *See id.* at 12-16. Appellant contends that double jeopardy precludes further prosecution on the charges in the instant case. *See id.* at 12-16.

The Commonwealth argues that the ADA's failure to turn over the missing discovery was not a tactic taken with the conscious disregard of a substantial risk that Appellant would be denied a fair trial. *See* Commonwealth's Brief at 7. The Commonwealth contends that the failure to turn over discovery was merely negligent and not reckless. *See id.* at 16-22.

Our standard of review is as follows :

An appeal grounded in double jeopardy raises a question of constitutional law. This court's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute

---

1925(b). Further, pursuant to Pa.R.A.P. 1925(a), the trial court filed a statement in lieu of opinion which relied on the September 5, 2024 Findings of Fact and Conclusions of Law. *See* Rule 1925(a) Statement, 10/14/24.

- 4 -

its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

*Commonwealth v. Krista*, 271 A.3d 465, 468–69 (Pa. Super. 2022) (citation omitted).

The Double Jeopardy Clauses of both the federal and Pennsylvania constitutions protect a defendant from repeated criminal prosecutions for the same offense. The purpose of this prohibition against double jeopardy is to prevent the government from making repeated attempts to convict the accused, thereby subjecting him to embarrassment, expense, and ordeal and compelling him to live in a continued state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty.

However, subjecting a defendant to a second trial following a mistrial or a successful appeal does not ordinarily offend double jeopardy protections. Dismissal of criminal charges punishes not only the prosecutor, but also the public at large, since the public has a reasonable expectation that those who have been charged with crimes will be fairly prosecuted to the full extent of the law. Accordingly, dismissal of charges is an extreme sanction that should be imposed sparingly, only in the most blatant and egregious circumstances.

*Id.* at 469 (citations omitted and formatting altered).

Under Article I, Section 10 of the Pennsylvania Constitution, prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result. This, of course, is in addition to the behavior described in [*Commonwealth. v.*] *Smith*, [615 A.2d 321 (Pa. 1992)], relating to tactics specifically designed to provoke a mistrial or deny the defendant a fair trial.

*Id.* (quoting *Commonwealth v. Johnson*, 231 A.3d 807, 826 (Pa. 2020) (formatting altered)).

> However, the [*Johnson*] Court made it clear that it is still true that not every instance of error by the Commonwealth requires a finding that retrial is barred:
>
> > In reaching our present holding, we do not suggest that all situations involving serious prosecutorial error implicate double jeopardy under the state Charter. To the contrary, we bear in mind the countervailing societal interests ... regarding the need for effective law enforcement, and highlight again that, in accordance with long-established double-jeopardy precepts, retrial is only precluded where there is prosecutorial **overreaching** – which, in turn, implies some sort of conscious act or omission.
>
> [*Johnson*, 231 A.3d] at 826 (citation omitted, emphasis in original).

*Id.* at 469–70. "[O]verreaching signals that the judicial process has fundamentally broken down because it reflects that the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of justice." *Johnson*, 231 A.3d at 824. Accordingly, while the remedy for reckless prosecutorial misconduct is to bar retrial, the remedy for negligent prosecutorial misconduct is retrial, and not dismissal on double jeopardy grounds. *See Commonwealth v. Sanchez*, 262 A.3d 1283, 1294 (Pa. Super. 2021); *see also Krista*, 271 A.3d at 474.

> The trial court addressed this issue as follows:
>
> Double Jeopardy precludes retrial in circumstances of prosecutorial overreaching that stems from either intentional or reckless conduct. Consequently, negligent acts of prosecutorial misconduct will not result in relief in the form of barring retrial.

> In this case, the trial court declared a mistrial because the Commonwealth turned over new evidence during trial and the fault could not be remedied by short delay in the trial. However, the question before the [c]ourt is not whether a mistrial should have been granted[,] but did the Commonwealth's misconduct rise to the level of recklessness that demands dismissal.
>
> The [c]ourt found the testimony from the evidentiary hearing that the Commonwealth was not aware of Officer Postell's scene footage prior to June 5, 2024 to be credible. Although this "missing" footage could have, and frankly should have been discovered through more diligent case preparation by ADA Belack, it demonstrates negligence and not recklessness. Therefore, the [c]ourt does not find that ADA Belack engaged in prosecutorial misconduct that [bars retrial].

Findings of Fact and Conclusions of Law, 9/5/24, at 4-5 (some formatting altered).

After review, we conclude that the trial court's findings and credibility determinations are supported by the record, and we discern no error of law in the trial court's determination. *See Krista*, 271 A.3d at 469. At the August 21, 2024 evidentiary hearing, ADA Belack testified that he turned over all of the video evidence he was aware of to the defense, and out of an abundance of caution, he even sent the video files to the defense a second time in an effort to make sure that the defense received it. *See* N.T., 8/21/24, at 33-36. ADA Belack testified that he believed that all available body-camera footage had turned over all of the evidence to the defense. *See id.* at 36-37. During a recess on the first day of trial, Officer Postell was reviewing the video evidence on his phone in preparation for being called as a witness and discussing the case with ADA Belack, and only then did ADA Belack learn that there was another video from the officer's body camera. *See id.* at 37-38.

As soon as ADA Belack discovered this additional video, he immediately alerted the defense and the trial court. **See id.** at 38-39.

After review, we agree with the trial court that while the Commonwealth's failure to turn over the video evidence was negligent, it did not amount to recklessness or constitute a conscious disregard for a substantial risk that Appellant would be denied the right to a fair trial. **See** Findings of Fact and Conclusions of Law, 9/5/24, at 4-5; **see also Krista**, 271 A.3d at 469. Although the Commonwealth failed to turn over the video evidence until after the trial had started, the record does not support the conclusion that the Commonwealth did so to gain an unfair advantage for the prosecution or in an attempt to obtain a "conviction at the expense of justice." **Johnson**, 231 A.3d at 824.

Accordingly, we agree with the trial court's conclusion that the Commonwealth's failure to provide the video did not amount to overreaching that bars retrial, and Appellant is not entitled to dismissal of the charges on double jeopardy grounds. **See** Findings of Fact and Conclusions of Law, 9/5/24, at 4-5; **see also Krista**, 271 A.3d at 468-69. On this record, we affirm the trial court's order denying Appellant's motion to dismiss and bar retrial.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 07/10/2025