J-S39025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PAUL SOLURI, JR. | : | |
| | : | |
| Appellant | : | No. 662 MDA 2022 |

Appeal from the Order Entered April 20, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0002944-2019

BEFORE: PANELLA, P.J., BENDER, P.J.E., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.: **FILED: MARCH 21, 2023**

Appellant, Paul Soluri, Jr., appeals as of right from the trial court's denial of his motion seeking to bar retrial. Appellant requested and received a mistrial after a police officer informed the jury, in response to a question by the prosecutor on re-direct examination, that Appellant was a convicted felon. Appellant contends that the prosecutor acted recklessly, thus placing this case within the ambit of the Pennsylvania Supreme Court's holding in **Commonwealth v. Johnson**, 231 A.3d 807, 826 (Pa. 2020), that "prosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." We conclude that a remand to the trial court for compliance with Pa.R.Crim.P. 587(b), which specifically addresses motions to bar retrial on double jeopardy grounds, is warranted

because there is an outstanding credibility determination that is critical to the parties' legal arguments.

We are mindful that the current procedural posture involves untested factual allegations by the Commonwealth. However, the Commonwealth's theory is relevant to the events preceding the mistrial, and we therefore discuss the facts adduced at Appellant's jury trial. Officer Chris Mazzucca was surveilling a housing development when an individual named Jason Cole aroused his suspicion after entering and exiting apartment 3-B in short order. Cole left the development in a vehicle, and Officer Mazzucca and his partner pulled him over for failing to use his turn signal. During the traffic stop, officers recovered a firearm, which Cole was prohibited from possessing. Cole was arrested and told investigators that Appellant had recently sold Cole the firearm from apartment 3-B. With Cole's cooperation, authorities arranged a wiretap, with Cole contacting Appellant to purchase another gun.[1] The authorities then procured a search warrant for apartment 3-B.

When authorities arrived to serve the warrant, Appellant, Appellant's paramour Renita Shilling, and Appellant's young daughter were all present. In the master bedroom, authorities recovered six firearms. Appellant was thereafter charged with eight total counts. The first six counts charged a violation of 18 Pa.C.S. § 6105(a)(1), which prohibits persons from possessing

---

[1] The Commonwealth filed charges against Cole, which were severed from Appellant's trial. Cole testified at Appellant's trial.

a firearm based on, *inter alia*, certain prior felony convictions.[2]   At count seven, the Commonwealth charged Appellant with violating 18 Pa.C.S. § 6111(c), pertaining to the illegal sale of firearms.  The last count was the criminal use of a communication facility, 18 Pa.C.S. § 7512(a), which prohibits the use of certain devices, including telephones, to commit felony offenses.

The mistrial involves the reason that Appellant was unable to lawfully possess the six firearms: a prior felony conviction.  To prove the charged Section 6105 violations, the Commonwealth must establish, as an element of the crimes, that Appellant was previously convicted of one of the enumerated offenses.  The Commonwealth is not required to accept a stipulation that the defendant has been convicted of one of the enumerated offenses. ***Commonwealth v. Jemison***, 98 A.3d 1254, 1256 (Pa. 2014) (holding that possibility of unfair prejudice is greatly mitigated by a cautionary instruction to the jury stating that the prior conviction is admitted only for purposes of proving the prior-conviction element).  The Commonwealth also charged Appellant with other firearm offenses that do not involve a prior criminal conviction as an element of those crimes.  Accordingly, the Commonwealth and Appellant agreed to sever the first six counts from the remaining two charges.  ***See Commonwealth v. Carroll***, 418 A.2d 702, 704 (Pa. Super. 1980) (severance of Section 6105 charges was required; "Clearly the fact that [the] appellant committed the former violent crime[] is of no evidentiary value

---

[2] The individual counts each pertain to one of the six firearms recovered from the master bedroom.

to the proof of any of the other crimes with which he is so charged; its only relevance is to satisfy the requirements of 'Former convict not to own a firearm'").

The jury, however, learned of Appellant's conviction during the testimony of Officer Mazzucca, who testified about the bedroom search. On cross-examination, Appellant probed whether the officers attempted to determine if the firearms belonged to Renita Shilling. Officer Mazzucca replied that authorities had run the serial numbers, which did not reflect any owner as there was no record of sale for the firearms. On re-direct, the Commonwealth asked, "Why didn't you ask Renita if the guns belonged to her?" The officer replied, "Renita didn't really have anything to do with this. We knew [Appellant] was a convicted felon after the --". N.T., 2/15/22, at 207. The answer was interrupted by Appellant, who requested and received a mistrial.

On March 18, 2022, Appellant filed a motion seeking to bar the Commonwealth from proceeding with a second jury trial pursuant to the Pennsylvania Constitution's double jeopardy protections. *See* PA. CONST. art. 1, § 10 ("[N]o person shall, for the same offense, be twice put in jeopardy of life or limb[.]"). The trial court held a hearing on April 12, 2022, followed by an order denying relief on April 20, 2022. Appellant filed a notice of appeal and complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. The trial court filed an opinion, and Appellant raises one issue for our review:

Whether [the] trial court abused its discretion in denying Appellant's motion to dismiss and bar retrial on the basis of double jeopardy when the prosecutor acted in a reckless manner and with reckless indifference amounting to prosecutorial overreaching sufficient to invoke double jeopardy protections under Article 1, Section 10 of the Pennsylvania Constitution[.]

Appellant's Brief at 2.

Our standard of review is well-settled:

An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*. To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings.

Where issues of credibility and weight of the evidence are concerned, it is not the function of the appellate court to substitute its judgment based on a cold record for that of the trial court. The weight to be accorded conflicting evidence is exclusively for the fact finder, whose findings will not be disturbed on appeal if they are supported by the record.

***Commonwealth v. Sanchez***, 262 A.3d 1283, 1288 (Pa. Super. 2021)

(cleaned up).

As previously stated, Appellant heavily relies upon ***Johnson***, wherein our Supreme Court again extended the scope of Article I, Section 10 in comparison to its federal counterpart.[3] Appellant's fundamental argument is

_____

[3] Generally stated, as applied to situations where the defendant requests and receives a mistrial due to prosecutorial acts, the United States Constitution bars retrial only if the prosecutor "overreached" in the sense of "goading" the defendant into requesting the mistrial. ***Oregon v. Kennedy***, 456 U.S. 667 (1982). Our Supreme Court departed from ***Kennedy*** in ***Commonwealth v. Smith***, 615 A.2d 321, 325 (Pa. 1992), which held that our Constitution "prohibits retrial of a defendant not only when prosecutorial misconduct is

*(Footnote Continued Next Page)*

that the Commonwealth acted recklessly for purposes of the **_Johnson_** holding because the prosecutor did not inform Officer Mazzucca of the parties' agreement to sever the Section 6105 counts. In support of this factual claim, Appellant cites the trial judge's comment at the hearing, which established that Officer Mazzucca asked the trial judge after the mistrial was declared what he did wrong. Appellant argues that this demonstrates that the Commonwealth failed to adequately prepare its witness. In terms of **_Johnson_**, Appellant submits that the failure to do so constituted a conscious disregard of the substantial risk that Appellant would be deprived of a fair trial. As to the requirement to show that the reckless acts deprived Appellant of a fair trial, Appellant avers that the charges were severed precisely because introducing the criminal history is so unduly prejudicial that a fair trial cannot occur if the jury is made aware of the defendant's criminal history. Appellant's Brief at 22 ("It is unfathomable that a prosecutor would agree to a bifurcated trial to assure no mention of Appellant's criminal history in front of a jury, but then fail to tell her witnesses not to bring it up.").

The Commonwealth responds that there is no evidence to support Appellant's assertion that it failed to tell Officer Mazzucca not to mention Appellant's criminal history. The Commonwealth cites its prosecutor's

---

intended to provoke the defendant into moving for a mistrial, but also when the conduct of the prosecutor is intentionally undertaken to prejudice the defendant to the point of the denial of a fair trial." In **_Johnson_**, our Supreme Court extended this rule to encompass reckless acts that deprive the defendant of a fair trial.

statements to the court at the hearing on Appellant's motion to dismiss that she did, in fact, tell Officer Mazzucca not to disclose Appellant's criminal history. The Commonwealth argues that Appellant's claim to the contrary is purely speculative. Additionally, the Commonwealth contends that, in any event, Appellant was not deprived of a fair trial.

We conclude that a remand is warranted for further factual findings, and we direct the trial court to follow the dictates of Rule of Criminal Procedure 587 on remand. As this Court explained in ***Commonwealth v. Gross***, 232 A.3d 819 (Pa. Super. 2020) (*en banc*), "an order denying a double jeopardy motion, that makes no finding that the motion is frivolous, is a collateral order under Rule 313 of the Pennsylvania Rules of Appellate Procedure[.]" ***Id.*** at 832. Rule 313 is jurisdictional, and collateral orders are separable from the main cause of action and thus appealable as of right. ***Id.*** at 833. As a result, if the court makes no finding that a motion to bar retrial on double jeopardy grounds is frivolous, the order is immediately appealable. The court did not find that Appellant's motion was frivolous, and Appellant properly appealed as of right on this basis.

Separately, Rule of Criminal Procedure 587 establishes the procedure for the trial court to follow when deciding a motion to dismiss on double jeopardy grounds. Among other requirements, Rule 587 requires the trial court to make findings of fact, including a specific finding as to whether the claim is frivolous when the motion is denied. This procedure does not govern or control our appellate jurisdiction. ***Id.*** at 833 n.1. Thus, failures to follow

Rule 587 are subject to waiver. **_Id._** at 848 ("If a trial court violates Rule 587, the parties are free to raise this issue on appeal.") (Olson, J., concurring).

Appellant claims that the trial court abused its discretion in not specifically addressing his argument concerning the prosecution's failure to prepare Officer Mazzucca. "The opinion also failed to address or even mention the fact that Officer Mazzucca told the court that the prosecutor did not inform him that he could not testify about Appellant's criminal record." Appellant's Brief at 23. While Appellant does not specifically cite the trial court's failure to follow Rule 587, we agree that the court abused its discretion in determining, as a matter of law, that Appellant's claim fails without making specific factual findings regarding what Officer Mazzucca was told before testifying. **_Cf. Sanchez_**, 262 A.3d at 1288 ("To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review…. [Credibility] findings will not be disturbed on appeal if they are supported by the record.").

At this juncture, we discuss the state of the record on that point. After Appellant filed his motion to dismiss, which also included a motion to dismiss under Rule 600 and a motion for nominal bail, the trial court ordered the Commonwealth to reply and show cause why the motions should not be granted. Following the Commonwealth's reply, the court apparently ordered a hearing,[4] which took place via video conference on April 14, 2022.

---

[4] The docket does not reflect any order scheduling the hearing.

Significantly, as it pertains to Appellant's double jeopardy claim, Appellant

made the following legal argument:

> [APPELLANT]: The Commonwealth and I, the prosecutors and I, had a conversation that we were concerned regarding the codefendant and whether or not that would come up on the stand and it was a real concern that they were worried about because they understood that that would be a problem.
>
> So we go through the questioning, all of these questions, 'How do you know the defendant? Have you ever been in contact with the defendant? Have you seen him multiple times? Do you recognize his voice? Have you had conversations with him?'
>
> And then they're surprised when he says he has a criminal record. They say they are surprised. What they also say, your Honor, in their answer is that they instructed him that that could not come up. Now, the [c]ourt will recall that after the mistrial was granted that Officer Mazzucca asked the [c]ourt, 'What did I do wrong?'"
>
> And the [c]ourt explained to him at that point that he couldn't bring out his criminal record.
>
> THE COURT: But that was – that was after the jury was excused or whatever else. Officer Mazzucca --
>
> [APPELLANT]: Okay.
>
> THE COURT: Officer Mazzucca asked me there because he was sitting next to me on the witness stand –
>
> [APPELLANT]: No doubt, and I'm not taking – I'm not making any –
>
> THE COURT: Okay, I just want to say that he said to me after he was packing up all of the exhibits that he was testifying to[,] he said, 'What did I do wrong?'
>
> And I explained it to him.
>
> [APPELLANT]: And, yeah, I'm not – I'm not saying that you did anything wrong and I didn't mean to indicate that at all, **but what you may also recall [is] Office [*sic*] Mazzucca['s] saying … that no one ever told him that**. So that's in direct conflict with the answer that the Commonwealth gave because Officer

Mazzucca said that he was never informed that he could not bring out the criminal record.

And it's for that reason, your Honor … that we seek to bar the retrial.

N.T., 4/14/22, at 5-7 (emphasis added).

The court did not address the bolded allegation. With respect to the foregoing argument, the prosecutor who tried the case replied, "Attorney Grill and I will represent again[,] as officers of the court[,] that based on our recollection[,] we had discussions with Officer Mazzucca relative to the fact that the case was being bifurcated and he was present, in fact, for the preparation of the codefendant in this case who we bent [*sic*] over, you know, multiple things that could and could not be brought up at that time." **Id.** at 9.

The court did not make any findings of fact or conclusions of law at the close of this hearing. The court stated it will "take it under advisement and issue a ruling in the near future." **Id.** at 10. On April 20, 2022, the trial court entered an order denying all three motions. With respect to the double jeopardy claim, the order states: "[Appellant]'s Motion to Dismiss and Bar Retrial Pursuant to Double Jeopardy is DENIED as this [c]ourt finds the prosecution did not act with intent to bring about a mistrial." Order, 4/20/22, at 1 (single page order).

Crucially, the parties offer competing interpretations of what credibility findings, if any, the court made. While we appreciate the prosecutor's willingness to represent, as an officer of the court, her version of events, that

testimony was not offered under oath, was not subject to any kind of cross-examination, and was not specifically credited or discredited by the trial court. Additionally, Officer Mazzucca was not called by either party. The record also does not indicate if the hearing was intended to include the presentation of witnesses.

To be clear, we do not suggest that Appellant's double jeopardy claim is meritorious if the prosecution did, in fact, fail to inform Officer Mazzucca that Appellant's prior criminal history was not at issue due to the severance of the Section 6105 charges. We may, of course, affirm on any ground supported by the record. **Gross**, **supra** at 846 (affirming order denying motion to dismiss on double jeopardy grounds on alternative basis). However, **Johnson** is of recent vintage and none of the precedents is directly on point. In **Commonwealth v. Krista**, 271 A.3d 465 (Pa. Super. 2022), we examined a motion to bar retrial involving a prosecutor's commenting, during a heated argument with opposing counsel, "[i]f [Krista] wants to take the stand and explain what happened, he can." **Id**. at 471. The trial court determined that the prosecutor's comment was spontaneous and therefore was not an intentional act designed to goad Krista into requesting a mistrial. In the course of our opinion, we explained the types of reckless acts that have been found to constitute "overreaching," *i.e.*, reckless acts that serve to deprive the defendant of a fair trial:

> [O]verreaching is conduct that reveals a fundamental breakdown in the judicial process where "the prosecutor, as representative of an impartial sovereign, is seeking conviction at the expense of

justice." Examples of overreaching, in addition to the farcical string of errors and omissions in **Johnson**, are the prosecution's "consistently making reference to evidence that the trial court had ruled inadmissible, continually defying the trial court's rulings on objections, and ... repeatedly insisting that there was fingerprint evidence linking [the defendants] to the crime when the prosecutor knew for a fact that no such evidence existed," **Commonwealth v. Martorano**, … 741 A.2d 1221, 1223 ([Pa.] 1999); and contacting a defense witness to intimidate her and prevent her from testifying, [**Commonwealth v. Byrd**, 209 A.3d 351, 359 (Pa. Super. 2019)]. In such scenarios, it is clear that the prosecutor made conscious decisions, be they intentional malfeasance or a failure to heed red flags signaling an unintentional error, to place getting a favorable verdict ahead of the defendant's rights.

*Id.* at 473–74 (citation omitted).

Fairly read, Appellant's argument suggests that the prosecutor "fail[ed] to heed red flags" through a combination of (1) not informing Officer Mazzucca that the charges had been severed and, thus, Appellant's prior criminal history was not an element of the crimes at issue, and (2) asking questions in the lead up to the question and answer that prompted the mistrial which made it likely that the officer would cite Appellant's criminal history.[5] Perhaps these arguments are compelling. Perhaps not. We simply decline to affirm on the alternative basis that the Commonwealth did not deprive Appellant of a fair trial, even if the two foregoing points are true. That would amount to a *per*

---

[5] Appellant argues that the prosecution failed to request any type of records that would establish it was Appellant who received the recorded phone call. Instead, according to Appellant, the Commonwealth relied on Officer Mazzucca's testimony that he recognized Appellant's voice from prior interactions. Appellant essentially argues that this primed Officer Mazzucca to disclose his criminal history, as the questioning intimated that the officer knew Appellant from prior criminal cases. Appellant's Brief at 17.

*se* rule that the Commonwealth does not act recklessly in failing to inform its witnesses that certain evidence is inadmissible, and, further, that even if the Commonwealth were reckless in the failure to prepare a witness, it does not deprive a defendant of a fair trial. It would be inappropriate to develop an argument along those lines on the Commonwealth's behalf and without the benefit of advocacy from the opposing side. Relatedly, the parties have crafted their arguments to account for disparate views of what the Commonwealth told (or did not tell) Officer Mazzucca.[6] For instance, the Commonwealth offers the following argument as to why the prosecutor's question was not reckless:

> The prosecutor, in asking this question, had no way of knowing, or even suspecting, that the question would elicit a response with regards to [Appellant's] prior criminal record. Rather, the prosecutor indicated at a hearing on [Appellant's] motion that she expected that the response would be that it was because [Appellant] was the one who was recorded on the wire. This would have been the logical response to the question asked. There is simply no indication that, in asking the question, the prosecutor "overreached to the point of denying [Appellant] a fair trial" by "seeking conviction at the expense of justice."

Commonwealth's Brief at 16 (citation to transcript omitted). Obviously, the Commonwealth's argument that its prosecutor had no reason to suspect Officer Mazzucca would cite Appellant's criminal history has much greater force if Officer Mazzucca was told not to do so. As Appellant offers in response,

---

[6] We offer no opinion on the issue of whether Appellant's requested relief would apply to the entire criminal information or only the charges that were presented to the jury at the first proceeding.

"[T]he fact that the prosecutor did not anticipate her witness's response does not mean she [was] not reckless. What made her reckless [was] her failure to properly prepare her case for trial." Appellant's Brief at 22.

In this regard, we add that both parties make unwarranted assumptions about what the trial court necessarily found. In its opinion, the trial court concludes that the prosecutor credibly "explained that she did not anticipate Officer Mazzucca would comment on Appellant's prior felony conviction in response to her question." Trial Court Opinion, 7/11/22, at 4. But this does not adequately address Appellant's overarching claim that the prosecutor had reason to expect Officer Mazzucca would cite Appellant's criminal history based on the alleged failure to discuss the matter with Officer Mazzucca. *See* Appellant's Brief at 14 (explaining that the question was asked "with conscious disregard of the substantial risk that the Commonwealth's witnesses would testify about Appellant's criminal record and mistrial would be declared, which is exactly what occurred."). Thus, the Commonwealth's claim that the trial court deemed the prosecutor credible is only partially correct. The trial court's finding certainly represents a conclusion that the prosecutor did not intentionally goad Appellant into requesting a mistrial, but its opinion does not address whether the question was recklessly asked under the circumstances. *Cf.* Order, 4/20/22, at 1 (single page order) (concluding only that the prosecutor "did not act with intent to bring about a mistrial"). Conversely, Appellant cites his own argument that the trial court overheard Officer Mazzucca's contradicting the prosecutor's representations. Appellant's Brief

- 14 -

at 14 n.1 ("Officer Mazzucca informed the trial court that no one ever informed him that he couldn't testify about his record.") (citing N.T., 4/14/22, at 5-6). The trial court did not address this claim.

In sum, we cannot conclude that the trial court credited the prosecution's representations, even accepting *arguendo* that a credibility finding is warranted in the absence of testimony under oath. Nor can we conclude that the trial court heard Officer Mazzucca say that he was never told not to disclose Appellant's criminal history. The trial judge neither agreed nor disagreed with Appellant's assertion that Officer Mazzucca made that comment. The only fact supported by the record is that Officer Mazzucca asked the court what he did wrong.

Returning to our standard of review, we agree with Appellant that the trial court abused its discretion in ruling on Appellant's **Johnson** claim without making adequate factual findings. On remand, we direct the trial court to follow the Rule 587 procedure, which includes making specific findings of fact concerning these issues after an evidentiary hearing, and findings as to whether Appellant's claim is frivolous.[7] We therefore vacate the order and remand for further proceedings consistent with this memorandum.

---

[7] Our remand does not suggest that the underlying claim is non-frivolous. If, for example, the facts establish that Officer Mazzucca was instructed by the prosecutor not to discuss Appellant's criminal history and was reminded of that fact immediately before testifying, that would go a long way towards establishing that the mistrial was due to mere prosecutorial error. Appellant would, of course, be entitled to file a petition for review if the trial court concludes on remand that the motion is frivolous. **See** Pa.R.Crim.P. 587(b)(5).

Order vacated.   Remanded for further proceedings consistent with this memorandum.   Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/21/2023