J-A20037-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RYAN SCOTT LAPISH | : | |
| | : | |
| Appellant | : | No. 2690 EDA 2023 |

Appeal from the Order Entered October 2, 2023
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0004464-2020

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and DUBOW, J.

MEMORANDUM BY DUBOW, J.:                    **FILED NOVEMBER 07, 2024**

Appellant, Ryan Scott Lapish, appeals from the October 2, 2023 order of the Montgomery County Court of Common Pleas denying his motion to bar retrial based on double jeopardy.  The court had previously granted Appellant a new trial based upon a typographical error in a text message introduced into evidence.  After careful consideration, we affirm the trial court's order and remand for new trial.

The following are the relevant facts and procedural history.  On February 20, 2020, Amber Hovermale ("Mother") brought her and Appellant's daughter, D.L., to her one-month well visit.  The nurse practitioner noticed that D.L. was lethargic and barely responsive, had a low body temperature and bruising, and had lost weight.  The nurse directed Mother to take D.L. to the local hospital, which transferred D.L. to the pediatric intensive care unit at

Children's Hospital of Philadelphia, where D.L. stayed for over a month to address significant brain injuries and a leg broken in two places.

While D.L. was hospitalized, Montgomery County Office of Children and Youth and the State Police investigated Mother and Appellant for potential child abuse. In addition, police arrested Appellant for driving under the influence ("DUI") in the early hours of March 14, 2020.

Later that day, Appellant sent the text message at issue in this appeal to Mother. The parties agree that the text message read as follows:

> How much you wanna bet, this is about to get worse for me? They're gonna slam me for **what I did to do [D.L.] and this what happened last night.** It doesn't look good at all....I'm trying to prepare myself for this week...potentially to go to jail. And I have no one to blame but myself....because everyone is right And [sic] that scares me.

Commonwealth's Prior Motion *in Limine*, 9/6/23, at 7 (emphasis added; child's name redacted and "[sic]" added by the Commonwealth; ellipses in original text message). Later, Appellant texted Mother asking her to "Delete this entire thread[.]" ***Id.***

In July 2020, the Commonwealth charged Appellant with various crimes related to D.L.'s injuries. In preparation for trial, the Commonwealth filed a motion *in* limine to admit the text message, but omitted the word "do[,]" which resulted in the following:

> How much you wanna bet, this is about to get worse for me? They're gonna slam me for **what I did to [D.L.] and this what happened last night.** It doesn't look good at all....I'm trying to prepare myself for this week...potentially to go to jail. And I have no one to blame but myself....because everyone is right And [sic] that scares me.

Commonwealth's Motion *in Limine*, 11/17/22, at 7 (emphasis added; child's name redacted and "[sic]" added by the Commonwealth; ellipses in original text message).

In a December 9, 2022 order, the trial court precluded any evidence relating to Appellant's DUI arrest and directed the parties to agree to redacted versions of the text messages with references to Appellant's DUI arrest removed. At trial, the Commonwealth presented a redacted version of the relevant text message, which continued to omit the word "do." N.T. Trial, 12/20/22, at 4-5. To prevent the jury from seeing the redaction, the Commonwealth and defense counsel agreed that witnesses would read the redacted version, rather than publishing the text message for the jury. ***Id.***

During her testimony, Mother read the following redacted version of the text message:

> How much you wanna bet this is about to get worse for me. They're going to slam me for **what I did to [D.L.].** It doesn't look good at all. I'm trying to prepare myself for this week, potentially go to jail, and I have no one to blame but myself because everyone is right and that scares me.

N.T. Trial, 12/20/22, at 55 (emphasis added; child's name redacted). The investigating State Trooper additionally testified that the version of the text message as read by Mother was what had been retrieved from Mother's iPad, failing to recognize the missing "do." ***Id.*** at 144-45. The Commonwealth additionally invoked the text message when cross-examining the defense's expert witness by asking him, "Is it important to you in considering the history for [D.L.] that [Defendant] said he was going to jail, quote, for what he did to

- 3 -

[D.L.]?" *Id.* at 230. The expert responded, "Not at all important." *Id.* Finally, during closing argument, the Commonwealth relied upon the misquoted text message repeatedly, including displaying the misquoted text message to the jury in a PowerPoint. N.T., 12/21/23, at 59-61, 79, 86-87, 89.

During the three-day trial, the Commonwealth additionally presented the testimony of the initial treating nurse practitioner and a treating physician, who served as an expert witness, the investigating state trooper, as well as Mother and her sister. Appellant presented an expert witness to contest the Commonwealth's medical testimony and Appellant's uncle, mother, and a character witness.

During jury deliberations, the jury requested to see the text messages. The court refused the request and instead read the redacted version but with the original correct phrasing: "what I did to do [D.L.]." *Id.* at 123-25.

Later in the evening, while jury deliberations continued, defense counsel requested a conference regarding the text message. *Id.* at 126-127. At this point, the Commonwealth thought that Mother had read the text message correctly but agreed that the Commonwealth's closing arguments referenced, and the PowerPoint slide included, the incorrect version with "do" omitted. *Id.* at 128. All counsel also "agreed that the 'typo' was accidental and not intentional[.]" Trial Ct. Op., 1/3/24, at 6. Defense counsel did not request a mistrial at that point, nor did he ask the court to inform the jury of the misquotation. N.T. 12/21/23, at 129. Approximately two hours later, the jury

returned its verdict of guilty on aggravated assault and endangering the welfare of a child.[1]  The court deferred sentencing for the preparation of a presentence investigation report.

On April 6, 2023, new defense counsel[2] filed a motion for new trial, claiming prosecutorial misconduct relating to the misquoted text message.  At the sentencing hearing on April 14, 2023, the court denied the motion for new trial following argument on the motion.  The court then imposed an aggregate sentence of 10-20 years of incarceration followed by 5 years of probation.

On April 23, 2023, Appellant filed a post-sentence motion, seeking, *inter alia*, a new trial claiming prosecutorial misconduct and trial counsel ineffectiveness based upon the misquotation of the text message.

On July 13, 2023, the court heard argument on the motion and then scheduled an evidentiary hearing for July 24, 2023, to address the claims of trial counsel ineffectiveness.  At the hearing, Appellant's trial counsel opined that the typo "was an absolute mistake[,]" and "an oversight[.]"  N.T. Post-Sentence Mot. Hr'g, 7/24/23, at 9.  He testified that when the judge read the correct version of the text message, "the Commonwealth was surprised[,] and I was surprised[,] and we all kind of scrambled to look back at all older examples of the text to get the proper text and everybody was surprised at the misquote."  **Id.**

---

[1] 18 Pa.C.S. §§ 2702(a)(1), 4304(a)(1).

[2] At trial, Edward J. Rideout, Esq. represented Appellant.  On March 22,2023, Zak T. Goldstein, Esq. entered his appearance for Appellant.

"The court found the testimony and the explanations offered by both trial [c]ounsel for the [p]arties very credible." Trial Ct. Op. at 9. On August 18, 2023, the court granted a new trial upon finding trial counsel ineffective for failing to notice the typographical error. The court stated that "[n]either [p]arty presented evidence on the issue of alleged prosecutorial misconduct, nor did the [c]ourt find prosecutorial misconduct." *Id.* at 9-10.

On September 6, 2023, Appellant filed a motion to bar retrial, asserting double jeopardy. On October 2, 2023, the trial court denied Appellant's motion to bar retrial, after a hearing on September 22, 2023. The court opined, however, that it did not find the motion to be frivolous. Findings of Fact and Conclusions of Law Pursuant to [Pa.R.Crim.P. 587], 10/2/23, at 9. Accordingly, Appellant's issue is immediately appealable pursuant to Rule 587(b)(6).

Appellant filed his notice of appeal on October 12, 2023. Both the court and counsel complied with Pa.R.A.P. 1925.

Appellant raises the following question:

Whether the trial court erred in denying the motion to bar retrial on double jeopardy grounds where Appellant received a new trial because the Commonwealth committed prosecutorial misconduct by editing a text message from Appellant to make it appear as if the message was an unequivocal confession rather than an ambiguous statement, showing the edited message to the jury through multiple witnesses, arguing the false confession to the jury eight times in closing arguments, and then failing to correct the record when trial counsel pointed out the modification while the jury was still deliberating?

Appellant's Br. at 7.

**A.**

A double jeopardy challenge raises a question of constitutional law, for which our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Krista*, 271 A.3d 465, 468 (Pa. Super. 2022). "To the extent that the factual findings of the trial court impact its double jeopardy ruling, we apply a more deferential standard of review to those findings." *Id.* In so doing, we defer to the trial court's credibility determinations if they are supported by the record, recognizing that "[a] fact-finder who hears witness testimony first-hand is able to take into account not only the words that are spoken and transcribed, but the witnesses' demeanor, tone of voice, mannerisms, and the like." *Commonwealth v. Johnson*, 231 A.3d 807, 818 (Pa. 2020).

The federal and Pennsylvania Double Jeopardy Clauses protect defendants from "repeated criminal prosecutions for the same offense." *Krista*, 271 A.3d at 469 (citation omitted); *see* U.S. CONST. amend. V.; PA. CONST. art. 1, § 10. The Clauses prevent the Commonwealth from subjecting a defendant "to embarrassment, expense, and ordeal and compelling him to live in a continued state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be found guilty." *Krista*, 271 A.3d at 469 (citation omitted).

The federal Double Jeopardy Clause bars retrial where "a mistrial resulted from prosecutorial overreaching in the form of intentional misconduct designed to provoke a mistrial." *Id.* Since 1992, the Pennsylvania Supreme

Court has interpreted the Commonwealth's double jeopardy protection as barring retrial not only where a prosecutor intentionally goads the defense to seek a mistrial but also when a prosecutor engages in intentional misconduct "to prejudice the defendant to the point of the denial of a fair trial." *Commonwealth v. Smith*, 615 A.2d 321, 325 (Pa. 1992). In 2020, the Supreme Court found Pennsylvania's Double Jeopardy Clause extended further to include reckless as well as intentional misconduct: "[P]rosecutorial overreaching sufficient to invoke double jeopardy protections includes misconduct which not only deprives the defendant of his right to a fair trial, but is undertaken recklessly, that is, with a conscious disregard for a substantial risk that such will be the result." *Johnson*, 231 A.3d at 826.

In so doing, however, the Court reiterated that not all "situations involving serious prosecutorial error implicate double jeopardy[,]" rather, courts must "bear in mind the countervailing societal interests . . . regarding the need for effective law enforcement[.]" *Id.* Courts have long recognized that the "[d]ismissal of criminal charges punishes not only the prosecutor[,] but also the public at large[.] *Id.* at 822 (citation omitted). Accordingly, "dismissal of charges is an extreme sanction that should be imposed sparingly." *Krista*, 271 A.3d at 474-75 (citation omitted). Thus, a defendant will generally be subject to retrial, rather than dismissal of changes, "where the first proceeding ends in a mistrial or the initial conviction is set aside on appeal, unless the conviction is overturned due to evidentiary insufficiency." *Johnson*, 231 A.3d at 819-20 (citations omitted).

- 8 -

Applying its holding, the Supreme Court in *Johnson* found that retrial would violate Pennsylvania's Double Jeopardy Clause due to the prosecution's repeated egregious errors. In *Johnson*, the Commonwealth prosecuted a capital murder case as if the defendant's DNA and the decedent's blood had been found on the same cap at the crime scene, when in fact there were two caps with separate property receipts: one red cap with defendant's DNA and one black cap with a bullet hole and decedent's blood. *Id.* at 811. The false presumption of a single cap linking the defendant and the decedent served as the cornerstone of the Commonwealth's case. *Id.* While the Supreme Court accepted the trial court's finding that the prosecution did not act intentionally, it nevertheless held that the totality of the circumstances, involving "unimaginable" mistakes by the prosecution and the investigating officers, suggested "a reckless disregard for consequences and for the very real possibility of harm stemming from the lack of thoroughness in preparing for a first-degree murder trial." *Id.* at 827.

This Court applied the holding in *Johnson* in *Krista*, where the misconduct involved the prosecutor's reference to the defendant's decision not to testify at trial in violation of the Fifth Amendment. This Court found that the record supported the "trial court's finding that the prosecutor's improper statement was the result of frustrated inadvertence rather than recklessness." *Krista*, 271 A.3d at 475. We concluded that "[t]he single spontaneous outburst" was "unquestionably an improper act, but not one undertaken to gain an advantage for the prosecution or to forge blindly forward towards a

conviction by subverting the truth[-]seeking process." *Id.* at 474 (citation omitted). Accordingly, the Court held that the statement did not "amount to the overreaching that bars a subsequent trial." *Id.*

In so doing, this Court explained that "retrial should be barred when the prosecutor's misconduct is an act of deliberate or reckless overreaching and not an isolated incident." *Id*. In addition to "the farcical string of errors and omissions in *Johnson*[,]" this Court highlighted two other examples of overreach as including the prosecutor in *Commonwealth v. Byrd*, 209 A.3d 351, 359 (Pa. Super. 2019), who "contact[ed] a defense witness to intimidate her and prevent her from testifying[,]" and the prosecutor in *Commonwealth v. Martorano*, 741 A.2d 1221, 1223 (Pa. 1999), who consistently referenced evidence ruled inadmissible, "continually def[ied] the trial court's rulings on objections, and repeatedly insist[ed] that there was fingerprint evidence linking the defendants to the crime when the prosecutor knew for a fact that no such evidence existed[.]" *Krista*, 271 A.3d at 473–74 (internal quotation marks omitted).

## B.

Relying on *Johnson*, Appellant contends that the Double Jeopardy Clause bars retrial in this case where the prosecution "omit[ed] a key word which turned the text message into a confession rather than an ambiguous statement of concern about getting arrested for something he did not do." Appellant's Br. at 28. He claims that the text message was the "linchpin" of

the Commonwealth's case, which was repeatedly referenced during trial and closing arguments. *Id.* at 30.

While acknowledging that the initial typographical error was a mistake, Appellant contends that "the Commonwealth had an opportunity and . . . an obligation to correct the record when the error came to light while the jury was still deliberating." *Id.* at 50. He asserts that "[a]t that point, there was still a chance that at least some of the unfair prejudice could have been cured[.]" *Id.* Instead, the Commonwealth asserted, incorrectly, that Mother read the correct version of the text message during her testimony. He argues that, when the Commonwealth "doubled down and defended this flawed conviction[,]" it engaged in reckless "prosecutorial overreach to obtain a conviction at the expense of the truth and justice." *Id*. Thus, Appellant contends that double jeopardy protections bar retrial and that he should be discharged.

We disagree with Appellant and, instead, agree with the trial court that the Commonwealth's actions constituted negligence rather than deliberate or reckless overreaching, which would bar retrial under the Pennsylvania Double Jeopardy Clause. The court explained its conclusion:

> Although the court found that the Commonwealth's presentation of the misquoted text message constituted an improper act, the court concluded that the Commonwealth's mistake in omitting one word from Appellant's text messages to [Mother] was not undertaken to gain an advantage or to blindly forge forward toward a conviction by subverting the truth[-]seeking process.

Trial Ct. Op. at 10. The court opined that the "Commonwealth's mistake did not rise substantially above ordinary negligence or constitute a conscious disregard for a substantial risk that the misconduct deprived Appellant of his right to a fair trial." *Id.* at 17. The court additionally noted that, unlike the cap in *Johnson*, the text message was not the central piece of evidence in this case, which also included conflicting medical testimony presented by the parties regarding whether D.L.'s injuries were the result of abuse or illness. *Id.* at 16.

As the Supreme Court explained, "prosecutorial errors are an inevitable part of the trial process, prosecutorial overreaching is not." *Johnson*, 231 A.3d 824 (citations and internal quotation marks omitted). This case falls squarely in the first category as it involves the prosecutor's negligence in making and failing to notice a typographical error made when performing court-ordered redaction, an error that defense counsel also missed. The trial court did not find, nor does the record reveal, any evidence of intent or conscious disregard of Appellant's right to a fair trial. It was a mistake that required the grant of a new trial but not the barring of a new trial. Accordingly, we affirm the trial court's order denying the motion to bar retrial.

Order affirmed. Case Remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 11/7/2024